Howard Edward CUDE, Appellant,

v.

The STATE of Texas, Appellee.

No. 58126.

Court of Criminal Appeals of Texas,
Panel No. 1.

Oct. 17, 1979.

Rehearing En Banc Denied
Nov. 21, 1979.

Pat Priest, San Antonio, court appointed on appeal, for appellant.

Bill M. White, Dist. Atty., F. G. Rodriguez, C. Michael Schill and H. Wayne Campbell, Asst. Dist. Attys., San Antonio, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and ODOM and DALLY, JJ.

## OPINION

ODOM, Judge.

This is an appeal from a conviction for aggravated robbery. Punishment was assessed by the jury at 99 years.

Appointed counsel on appeal raises two grounds of error, which he argues together. It is asserted that appellant was denied a fair trial and that he was denied effective assistance of counsel at his trial. In support of these two grounds of error counsel lists 34 items "as examples of why and how [appellant] was denied a fair trial and the effective assistance of counsel."

■ The right to effective assistance of counsel means counsel reasonably likely to render and rendering reasonably effective assistance of counsel. *Butler v. State,* Tex.Cr.App., 499 S.W.2d 136. Counsel's services are to be judged by the totality of the representation, and challenges will be sustained only if firmly founded. *Ex parte Prior,* Tex.Cr.App., 540 S.W.2d 723, 727, and cases cited there. On the other hand, if from the entire record it is apparent that the defendant did not receive effective assistance of counsel, this Court will have no hesitancy to so hold. *Rodriguez v. State,* Tex.Cr.App., 340 S.W.2d 61. This Court has even reviewed the issue sua sponte. *Vessels v. State,* Tex.Cr.App., 432 S.W.2d 108, 115 (on motion for rehearing).

The most serious matters raised in support of appellant's jointly argued grounds of error concern the cross-examination of appellant's mother, who was a witness for the defense, and the rebuttal testimony of police officer Garrison, who was called by the State to contradict testimony elicited from appellant's mother on cross-examination. All of the matters that will be discussed were elicited by the State from these two witnesses, and were received without objection from appellant's court appointed trial counsel.

Appellant's mother was called to give alibi testimony for the defense, which she gave in less than three pages of direct examination. There followed twenty-four pages of cross-examination which ranged far and wide, showing extraneous offenses and arrests of appellant and his relatives, and conversations between the witness and Garrison about other prejudicial matters. After the defense rested, the State called Garrison, who presented a different version of his conversations with appellant's mother, presenting further evidence of extraneous offenses and planned future crime by appellant.

During the course of the cross-examination of appellant's mother, she told of being asked to sign a statement that her son had committed armed robberies and owned a sawed-off shotgun. She denied that she had told Garrison that her son owned a sawed-off shotgun, had stolen a car, or placed her in fear of her own life, but admitted that marihuana and a sawed-off shotgun were found by Garrison when he searched their apartment. She also referred to her son having been in jail on other charges and made numerous references to her daughter's problems with the law, stating that her daughter was in the penitentiary and her son-in-law was in jail.

Garrison testified to two conversations with appellant's mother. According to him, she and one of her daughters asked him to arrest appellant because he was about to commit an armed robbery. At their next meeting, after appellant's arrest, she expressed great fear of appellant and asked him to search her apartment. Once there, she turned over to him a shotgun that she said appellant had cut off with a tubing cutter and planned to use in future robberies, and marihuana that she said belonged to appellant. As he left she told him where a green Mustang was parked that appellant had stolen and planned to use in future robberies. There were also references to an arrest of appellant's sister.

In summary, there was evidence of many extraneous offenses by appellant, including possession of marihuana, possession of a sawed-off shotgun,[1] theft of an automobile, and references to past robberies and arrests and to planned future robberies.

■ Although much of the evidence of extraneous offenses introduced by Garrison's testimony was in conflict with the cross-examination responses of appellant's mother, those matters were not admissible for any purpose. See, *Albrecht v. State,* Tex.Cr.App., 486 S.W.2d 97. Even though other portions of the two conversations were admissible to impeach the alibi testimony of appellant's mother, the permissible scope of such impeachment was far exceeded by the numerous extraneous offenses listed above. Under the recent case of *Bates v. State,* 587 S.W.2d 121 (1979), the State's impeachment by showing extraneous offenses was clearly on collateral matters.

■ Although an isolated instance of a failure to object to inadmissible evidence does not necessarily render counsel ineffective, *Ewing v. State,* Tex.Cr.App., 549 S.W.2d 392; *Long v. State,* Tex.Cr.App., 502 S.W.2d 139, in this case there was not a single objection to the numerous and repeated showings of extraneous offenses during the lengthy course of cross-examination of appellant's mother and of direct examination of officer Garrison.

The numerous extraneous and prejudicial matters set out above are some of the items listed in appellant's brief as the basis for his claim that he was denied a fair trial. The failure of his court appointed trial counsel to object to any of these matters is the basis of his claim that he was denied effective assistance of counsel. These two grounds of error, which may be characterized as complements to one another, reflecting opposite sides of the same coin, are the same as the respective positions taken by the majority and concurring opinions in *Ruth v. State,* Tex.Cr.App., 522 S.W.2d 517. Although the number of extraneous and prejudicial references made before the jury in this case is not as large as in *Ruth,* it would

---

1. The instant offense was not committed with a shotgun.

be bad law to construe the high water mark of an extreme fact situation to be the minimum threshold for reversible error. The same violation of principles that compelled reversal in *Ruth* also requires reversal here. Even though the violation here was not so extreme as in *Ruth,* it nevertheless was sufficient to have denied appellant the fair trial and effective assistance of counsel to which he was entitled.

Because appellant was denied a fair trial and the effective assistance of counsel, the judgment is reversed and the cause remanded.

DALLY, J., concurs in the result.