Kenneth Ray CALLAWAY, Appellant,

v.

The STATE of Texas, Appellee.

No. 62666.

Court of Criminal Appeals of Texas,
Panel No. 3.

Feb. 27, 1980.

Robert H. Roeder, McKinney, for appellant.

Tom O'Connell, Dist. Atty., McKinney, Robert Huttash, State's Atty., Austin, for the State.

Before ROBERTS, PHILLIPS and DALLY, JJ.

OPINION

PHILLIPS, Judge.

This is an appeal from a conviction for burglary of a habitation. Appellant entered a plea of guilty and was sentenced to imprisonment for 20 years.

Prior to appellant's plea of guilty, a jury was impaneled to determine his competency to stand trial. The jury found that appellant was competent. Appellant contends that he was denied both a fair hearing on the issue of competency and effective assistance of counsel. We agree that appellant was denied a fair hearing on the competency issue, and we also find that he received ineffective assistance of counsel at his competency hearing. Accordingly, the cause is remanded to the trial court with instructions to hold a retrospective competency hearing.

The trial court appointed two psychiatrists, Drs. William R. Tooley and Thomas L. Thornton, to examine appellant on the issue of competency. Dr. Tooley concluded that appellant exhibited signs of chronic paranoid schizophrenia and presently was incompetent to stand trial. Dr. Thornton similarly concluded that appellant was suffering from chronic paranoid schizophrenia with acute exacerbation and could assist his lawyer only to a limited degree.

After Drs. Tooley and Thornton submitted their findings to the trial court, Steve Kempf from the Collin County District Attorney's Office contacted Drs. James P. Grigson and John T. Holbrook, and at Kempf's request they examined appellant. Dr. Holbrook concluded that appellant was malingering and that he was a sociopath rather than a paranoid schizophrenic. Dr. Grigson concluded that appellant was an extremely severe sociopath who feigned symptoms of chronic paranoid schizophrenia, which led the other psychiatrists to err in their diagnoses. Both Grigson and Holbrook expressed the opinion that appellant was competent to stand trial.

Appellant claims that the prosecutor's final argument and the testimony of the State's two psychiatric witnesses were highly inflammatory and aimed at prejudicing the deliberations of the jury in favor of a finding of competency to stand trial. An examination of the record reveals an overabundance of objectionable argument and testimony. The following excerpts are from the prosecutor's final argument to the jury:

In fact, he does not have to stand trial. He does not have to go back down to Huntsville again, he doesn't have to even go to a hospital, despite the fact that he says that he probably does. He has had good results there before, he has been able to escape before, for example, and I think you have heard testimony concerning what kind of psychiatry we have got there.

\* \* \* \* \* \*

And I think one of the things we have to consider, we are not talking about a small crime. We are not talking about someone who may be DWI. We're not talking about a little crime, we're talking about burglary. We're talking about houses; we're talking about . . . .

[Defense Counsel]: Your Honor, we object to these kind of questions. This is not an issue as to the charges that are pending against him.

THE COURT: I will sustain the objection.

[Prosecutor]: Ladies and Gentlemen, you all have to recognize that this is a felony proceeding we are in. A District Court. We are not down in the misdemeanor court, and I think you have to recognize the seriousness of the decision—I mean this, I'm not slighting it in any way whatsoever—because what you do here today depends on how you an-

swer these issues. It's going to effect [sic] a great deal of people, I am sure.

If you find that they have sustained your burden of proof . . . , then he is going to go down to the State Hospital in Rusk where you have heard the security is not very good, and you are going to have to infer whatever you are going to have to infer from that fact.

\* \* \* \* \* \*

. . . That this is a game and a sham by this man over here, this man in the blue shirt, to fool you into putting him in someplace to either have it easy or to get whatever drugs he wants, or whatever happens in these State hospitals; a place where he can escape and be back on the streets to do some other antisocial activities. If that happens, it's a consideration, and we have to consider it, if that happens, somebody else may be a victim, and we would have to do it over and over and over again. . . .

The following excerpts are from the testimony of Dr. Holbrook:

A [Dr. Holbrook] Yes, sir, he talked about voices, but it seems to me as we get this history, these voices only appear when he is in serious difficulties as he was back in 1959, and then in this case.

Q [Prosecutor] What happened back in 1959?

A [Dr. Holbrook] He was charged with armed robbery at that time, and he had some other charges against him. He managed to get himself in a mental hospital there in Oklahoma for some period of time, and did not serve any time for these offenses by reason of being called insane, I suppose.

The next time he got into difficulties, he apparently did not utilize the voices, and wound up in the Department of Corrections for several years . . .

\* \* \* \* \* \*

Q [Prosecutor] Now were you able to determine how intelligent he was?

A [Dr. Holbrook] . . . In the last offense that brought him from the Texas Department of Corrections, and

that is selling a controlled substance, I would say that he is average intelligence, maybe a little higher than that. . . .

Dr. Holbrook also testified that appellant wanted to be found incompetent and placed in a psychiatric hospital because it is easy to escape from mental institutions:

Q [Prosecutor] Let me ask you a hypothetical question. Let me ask you, assuming that you have been told by this defendant, you as a psychiatrist had been told by this defendant, I sure hope you don't send me to the state mental hospital; what do you think that might mean?

A [Dr. Holbrook] I think that might mean that that is exactly where he wants to go. He has a history of escaping from both mental hospitals and jails, so I would expect that he would get the most mileage out of that.

\* \* \* \* \* \*

A [Dr. Holbrook] . . . I think he would prefer to be in a mental hospital. It gives him a better chance to escape or come back and beat the charges lodged against him on insanity or some competency or that kind of thing.

\* \* \* \* \* \*

A [Dr. Holbrook] . . . he has a history of having escaped from psychiatric hospitals. It's very easy to get out of a psychiatric hospital.

The following excerpts are from the testimony of Dr. Grigson:

Q [Prosecutor] Now what was the content of his thoughts?

A [Dr. Grigson] . . . He was able to give me his prior history with the law, which differed extremely with the factual parts of it. He told me that he had only been in trouble once before, and this was due to the fact that he was trying to stay awake so his enemies would not harm him. Therefore, he was taking amphetamines. Actually he was sold—he was tried and found guilty of the sale of amphetamines.

He had a very long history, dating back to about the age of 18, of very severe criminal behavior. . . .

\* \* \* \* \* \*

Q [Defense Counsel] What was his goal in manipulating you?

A [Dr. Grigson] To keep from going into the penitentiary. He has been successful in getting into the psychiatric hospital and escaping from it. He knows that the security, and even maximum security, in a psychiatric hospital is not the same as in a penitentiary.

In *Brandon v. State* (No. 59,348, decided 4/25/79), this Court held that a defendant was denied due process because he did not receive a fair hearing on his competency to stand trial. Specifically, the Court found that the prosecutor's argument was "so inflammatory and misleading that it prevented a fair determination of appellant's competency." The prosecutor's argument in the present case was at least as prejudicial as the argument condemned in *Brandon.*

In the instant case the prosecutor suggested that if appellant were found incompetent to stand trial, he would go free. The prosecutor further argued that even if appellant were placed in a psychiatric hospital, he could "escape and be back on the streets." The prosecutor emphasized that security at Rusk State Hospital was "not very good." In addition, the prosecutor argued that appellant should be found competent because burglary, the offense with which he was charged, was such a serious crime.

> Such emotional, erroneous and prejudicial comments have no place in a dispassionate resolution of the question whether [a defendant is] competent . . . to stand trial.
>
> These comments most probably infected the whole decision-making process of the jury. . . . Such irrelevant diatribes cannot be countenanced.

*Brandon,* supra (quoting from *Bruce v. Estelle,* 483 F.2d 1031 [5th Cir. 1973]). We think this language equally applies to the present case.

■ The guilt or innocence of a defendant is not at issue in a competency hearing, and it is improper to introduce evidence of the offense itself. *Ex parte Hagans,* 558 S.W.2d 457 (Tex.Crim.App. 1977); *Townsend v. State,* 427 S.W.2d 55 (Tex.Crim.App.1968). It likewise is improper for a prosecutor to argue that a defendant should be found competent because of the seriousness of the offense charged. See *Brandon,* supra. Otherwise, the issue for the jury's determination becomes confused, and the jury is exposed to evidence or argument that unduly prejudices it against finding the defendant incompetent. *Brandon,* supra.

■ The prosecutor's argument about appellant being "back on the streets" was improper. This type of argument has been condemned many times. *Brandon,* supra; *Martin v. Estelle,* 546 F.2d 177 (5th Cir. 1977); *Bruce v. Estelle,* supra.

■ The testimony of the State's two psychiatric witnesses also was highly prejudicial. They testified that appellant wanted to be placed in a psychiatric hospital because it is easy to escape from such institutions. Their testimony contained frequent references to prior convictions and extraneous offenses, and the prejudicial effect of this testimony greatly outweighed its probative value. See *Perez v. State,* 590 S.W.2d 474 (Tex.Crim.App.1979); *Albrecht v. State,* 486 S.W.2d 97 (Tex.Crim.App. 1972). The testimony of these two witnesses was so inflammatory and misleading that it deprived appellant of a fair determination on the issue of competency. We conclude that appellant was denied due process because he did not receive a fair hearing on his competency to stand trial.

Appellant also contends that he was denied effective assistance of counsel. At the competency hearing appellant was represented by a court-appointed attorney. This attorney commendably recognized his inexperience in criminal law and the attendant harm that could befall his client. On at least two occasions during the pendency of this case the attorney asked the court to appoint a more experienced attorney to assist him. The record reflects the following request for appointment of co-counsel, which occurred prior to the competency hearing:

[Defense Counsel]: Your Honor, this particular case—the outcome is going to hinge quite a bit on the possibility of having a life sentence. I don't think it's a case that, since *I am not a criminal lawyer as such, and it might be advisable to have another attorney who is more attuned as a criminal attorney to work with me as co-counsel in this case.* I do feel that since Mr. Callaway has a past record, the outcome of this trial could be, as such, to give him a life sentence, and I feel that he should get the best representation that he can get due to the severity of the sentence. [Emphasis added]

The record also reflects the following request for appointment of co-counsel, which occurred after the competency hearing and which was joined by the prosecutor:

[Defense Counsel]: . . . We filed a motion in Dallas following the appeal on one of the other enhancement offenses, and *I feel like probably it is getting into a pretty complicated criminal situation. I would like again to urge the Court maybe to appoint co-counsel, someone that is more competent in the field— in criminal law.*

[Prosecutor]: *We would join on that motion, based on his own recommendation. I think probably for potential later problems, we would request the Court to appoint co-counsel.* [Emphasis added]

On both occasions the court denied the defense attorney's request for appointment of co-counsel.

The record shows that during the testimony of Drs. Grigson and Holbrook, defense counsel made only three objections, all of which were overruled. None of these objections was directed toward the numerous instances of highly prejudicial testimony. The record reflects that the testimony of these two witnesses frequently was narrative in form and totally unresponsive to the questions asked. Even on cross-examination, defense counsel permitted unresponsive and inflammatory answers. During final argument the prosecutor made many prejudicial comments, but defense counsel made only the one objection previously set out. Even though this objection was sustained, defense counsel failed to request an instruction to disregard the prosecutor's comment.

We also note that defense counsel failed to subpoena Dr. Thornton until the day of the competency hearing, and consequently the psychiatrist did not testify.[1] When asked about his failure to timely subpoena his witness, defense counsel explained that he never had subpoenaed a witness in the course of his professional activities. He admitted that he was unaware that he had to subpoena his own witnesses.

In *Cude v. State*, 588 S.W.2d 895 (Tex. Crim.App.1979), we recently set out the rules for evaluating a claim of ineffective assistance of counsel:

The right to effective assistance of counsel means counsel reasonably likely to render and rendering reasonably effective assistance of counsel. *Butler v. State*, Tex.Cr.App., 499 S.W.2d 136. Counsel's services are to be judged by the totality of the representation, and challenges will be sustained only if firmly founded. *Ex parte Prior*, Tex.Cr.App. 540 S.W.2d 723, 727, and cases cited there. On the other hand, if from the entire record it is apparent that the defendant did not receive effective assistance of counsel, this Court will have no hesitancy to so hold. *Rodriguez v. State*, 170 Tex. Cr.R. 295, 340 S.W.2d 61. This Court has even reviewed the issue sua sponte. *Vessels v. State*, Tex.Cr.App., 432 S.W.2d 108, 115 (on motion for rehearing).

An isolated instance of a failure to object to inadmissible evidence does not necessarily render counsel ineffective. *Ewing v. State*, 549 S.W.2d 392 (Tex.Crim.App. 1977). In the present case, however, there was an almost total failure to object to numerous instances of highly prejudicial argument and testimony. In addition, appellant was deprived of the testimony of one

1. Over the prosecutor's hearsay objection, the court on its own motion admitted into evidence Dr. Thornton's written findings, which the psychiatrist previously had submitted to the court.

of his two psychiatric witnesses because defense counsel failed to timely subpoena Dr. Thornton.

 A defendant's potential criminal liability is one factor to be considered in determining the level of competency required of defense counsel. In the present case appellant was indicted under the habitual offender statute, which carried the potential for an automatic sentence of life imprisonment. When the defense attorney asked the court to appoint co-counsel to assist him, he emphasized both his inexperience in criminal law and the seriousness of appellant's potential criminal liability.

There is no reasonable basis for concluding that defense counsel's failures were "a part of trial strategy." Cf. *Long v. State*, 502 S.W.2d 139 (Tex.Crim.App.1973). Based on the conduct of defense counsel previously outlined and our review of the entire record, we conclude that appellant was denied effective assistance of counsel at his competency hearing. See *Cude*, supra. In *Cude* we observed that the two claims of denial of a fair trial and denial of effective assistance of counsel sometimes "may be characterized as complements to one another, reflecting opposite sides of the same coin." Both sides of the coin are present in the instant case. We hold that appellant was denied a fair hearing on his competency to stand trial and effective assistance of counsel at his competency hearing.

In his only ground of error not related to the competency hearing, appellant contends that the trial court erred when it overruled his motion to dismiss the indictment for failure to provide him a speedy trial. See Article 32A.02, V.A.C.C.P. In the interest of efficiency, we shall rule on the merits of this ground of error before remanding the cause to the trial court for a retrospective competency hearing.

The record reflects that the State filed an announcement of ready for trial within the time limitations of Article 32A.02, supra. Appellant contends that an announcement of ready is insufficient to establish compliance with the Speedy Trial Act. In *Barfield v. State*, 586 S.W.2d 538 (Tex.Crim. App.1979), we held that an announcement of ready constituted a prima facie showing of conformity to the Act. In the present case the evidence presented by appellant was insufficient to rebut the State's assertion of readiness. We hold that the trial court properly overruled appellant's motion to dismiss the indictment.

The cause is abated and remanded to the trial court with instructions to impanel a jury and conduct a competency hearing within 90 days to determine whether appellant was competent to stand trial at the time of his competency hearing in October 1978. See *Brandon*, supra; *Caballero v. State*, 587 S.W.2d 741 (Tex.Crim.App.1979). A record of this proceeding shall be prepared in the manner required by Article 40.09, V.A.C.C.P., and transmitted to this Court for further disposition.

It is so ordered.

DALLY, J., concurs in the result.