Maurice WENZY, Appellant,

v.

The STATE of Texas, Appellee.

No. C14–92–00174–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

April 29, 1993.

Discretionary Review Refused
Sept. 15, 1993.

Aaron E. Ray, Houston, for appellant.

Karen A. Clark, Houston, for appellee.

Before ROBERTSON, CANNON and BOWERS, JJ.

## OPINION

BOWERS, Justice.

Appellant entered a plea of not guilty before a jury to the offense of aggravated robbery. TEX.PENAL CODE ANN. § 29.03.

He was convicted and the jury assessed punishment at imprisonment for 75 years and a fine of $10,000.00. In one point of error, appellant argues he was denied effective assistance of counsel. We reverse and remand.

■ The right to effective assistance of counsel does not mean errorless counsel whose competency or accuracy of representation is to be judged by hindsight. *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim.App.1984). In making a claim of ineffective assistance, appellant must identify counsel's acts or omissions alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 2065–66, 80 L.Ed.2d 674 (1984).

Appellant cites four examples of trial counsel's ineffective assistance: (1) counsel's failure to file a motion in limine; (2) counsel's failure to ask for an instruction to disregard and failure to request a mistrial when a witness testified that appellant's brother implicated appellant in the crime; (3) counsel's failure to view the lineup videotape until trial was in progress; and (4) counsel's failure to withdraw from representation because of a conflict of interest in representing both appellant and appellant's brother in separate trials.

■ Isolated failures to object to certain procedural mistakes or improper evidence or argument do not constitute ineffective assistance of counsel. *Ingham*, 679 S.W.2d at 509. The reviewing court must examine the totality of counsel's representation. *Ex parte Carillo*, 687 S.W.2d 320, 324 (Tex.Crim.App.1985). In determining if counsel was ineffective, this court must apply a two-prong test. First, appellant must show that counsel's performance was so deficient that counsel's assistance was not "reasonably effective." If appellant succeeds in this burden, he then must affirmatively show prejudice. Appellant must show that had counsel not made the errors, the result of the proceeding would have

been different. *Strickland,* 466 U.S. 668, 104 S.Ct. 2052. Appellant must prove ineffective assistance of counsel by a preponderance of the evidence. *Moore v. State,* 694 S.W.2d 528, 531 (Tex.Crim.App.1985). After reviewing the entire record, we find that although appellant cites only four examples, the record is replete with counsel's ineffectiveness.

In his first example, appellant contends counsel was ineffective because he failed to file a motion in limine. Appellant argues that as a result of not filing the motion in limine, damaging testimony by Officer Glenn Smart was admitted into evidence. In his second example, appellant complains counsel failed to ask for a jury instruction to disregard and failed to request a mistrial when Officer Smart testified that appellant's brother implicated appellant in the crime. We will consider these two examples together.

Glenn Smart, a Houston Police Officer, testified that Clarence Wenzy, appellant's brother, was arrested as a suspect for the robbery of a Shell service station that occurred on June 15, 1991. Officer Smart gave the following testimony:

STATE: Did you talk to Clarence Wenzy about that incident [Shell service station robbery]?

SMART: Yes, sir, I did.

STATE: Did you ask him about his involvement?

SMART: Yes, sir.

STATE: And did he mention anyone else's involvement in that robbery?

DEFENSE: Objection, Your Honor, it's hearsay.

COURT: Approach the bench, gentlemen.

(At this time an unrecorded discussion was held at the bench.)

STATE: Sir, based on that conversation, did anyone else become a suspect in this case?

SMART: Maurice Wenzy.

STATE: And can you tell us how that happened, sir?

SMART: Clarence did not involve himself, but he said that Maurice was responsible.

DEFENSE: I object, Your Honor, that's hearsay again. It's also prejudicial.

STATE: Well (sic) withdraw the question, judge.

COURT: All right.

Although the State withdrew its question, the harm was done. Appellant's counsel should have requested a mistrial, or at the very least ask the trial court to instruct the jury to disregard Officer Smart's testimony. Officer Smart continued testifying:

STATE: Based on your conversation with Clarence Wenzy, did you make efforts to contact Maurice Wenzy?

SMART: Yes, sir, we did.

STATE: Can you tell the ladies and gentlemen of the jury what efforts you made to contact this individual?

SMART: Well, first of all, we found out that he was currently wanted for parole violation.

DEFENSE: Objection, nonresponsive.

COURT: Sustain the objection.

\* \* \* \* \* \*

Counsel again failed to request either an instruction that the jury disregard the testimony or a mistrial. Neither the State nor appellant's counsel called Clarence Wenzy as a witness, although he was available and in the courtroom hallway. In addition, when appellant testified, neither his attorney, nor the State questioned him about any alleged parole violation. Furthermore, although appellant filed an application for probation, his counsel never asked him if he had ever been convicted of a felony in this state or any other state. Maurice Wenzy had never been convicted of a felony and was not on parole.

Later in the trial, Officer Smart testified as follows:

STATE: Can you tell us first of all whether or not this [appellant] admitted to you that he had done robberies?

DEFENSE: Your Honor, I object. It's just going beyond the nature of an admission or confession.

STATE: Your Honor, we are offering it to show—

COURT: Approach the bench.

(At this time an unrecorded discussion was held at the bench.)

COURT: Overrule the objection.

STATE: ... did ... Maurice Wenzy, make admissions to you about being involved in armed robberies?

SMART: Yes.

STATE: Can you tell the ladies and gentlemen of the jury about that conversation, sir?

SMART: Following his arrest, we advised him of his legal warnings and asked him if he—We asked him if he was involved in this particular case, which he denied. He went on to say that he was involved in two robberies that occurred at a particular McDonald's.... He went on to say that he was involved in a Whataburger somewhere on Bissonnet, but he couldn't recall the exact location. And he also admitted to several purse snatchings, but could not get specific about where or when.

\* \* \* \* \* \*

STATE: Why didn't you bring a written confession in from this man to show the jury?

SMART: Because he didn't want to give us one.

\* \* \* \* \* \*

STATE: Based on your conversation with him, and the evidence that you were able to gain from lineups, identification, and so forth, how many robberies did you clear as attributable to this man?

SMART: 14. 14 city cases, H.P.D. case.

STATE: Pass the witness, Your Honor.

Once again, appellant's counsel failed to request either an instruction to disregard the testimony or a mistrial. On cross-examination, Officer Smart testified that an electronic recording of the confession had not been made. The officer testified Maurice Wenzy did not want to give a statement in writing, or give a video confession.

Appellant vigorously denied making any oral confessions:

DEFENSE: When you were questioned by Sergeant Smart, did you give any oral statements?

WENZY: No, sir, I didn't give any statements at all.

DEFENSE: What happened? What was said to you?

WENZY: Well, he asked me questions about different robberies. Well, he was telling me that I did these robberies, he didn't ask me. And he was saying I did this, and I did that, but I denied everything because I didn't rob anybody.

\* \* \* \* \* \*

Oral confessions are admissible if the oral statement "contains assertions of facts or circumstances that are found to be true and which conduce to establish the guilt of the accused, such as the finding of secreted or stolen property or the instrument with which he states the offense was committed." TEX.CODE CRIM.PROC.ANN. art. 38.22 § 3(c); *See Port v. State*, 791 S.W.2d 103 (Tex.Crim.App.1990). Maurice Wenzy was on trial for robbing a Shell service station on June 15, 1992. Nothing in appellant's alleged oral confession contained assertions of facts or circumstances that established appellant's guilt in the Shell service station robbery. Appellant's counsel failed to file a motion in limine to prevent the alleged oral confession from being admitted, he failed to request an instruction to disregard and he failed to request a mistrial.

The State's witnesses also included Jason Berry, who testified about a robbery that occurred at a Whataburger restaurant on June 20, 1991. Berry gave complete details of the robbery and said that the gunman held the gun to Berry's head. The State showed Berry a photograph of a gun and asked Berry if the gun was similar to the gun that was used during the robbery. Berry said "yes."

The State also asked Berry if he saw "the person in the courtroom today, ... who was in the car with the gunman on the date that you were robbed?" Berry said "yes" and identified appellant. Berry testified that the gunman had a gold front

**56**

tooth. Counsel for appellant did not object to any of this testimony. Neither appellant nor his brother, Clarence, have a gold tooth.

The State's witnesses also included Yvonne Riggins. Riggins testified about a robbery at a McDonald's restaurant that occurred on June 1, 1991. Riggins testified she was working at the drive-through window. When a car drove up to the window, Riggins leaned out of the window to take the money for the food order. The passenger in the back seat opened the car door, grabbed Riggins through the drive-through window and put a gun to her head. The State showed Riggins a photograph of a gun and asked Riggins if the gun was similar to the gun that was held on her when she was robbed. She responded that the barrel of the gun looked similar; she did not see the handle of the gun used during the robbery.

Riggins continued describing the robbery. The State then asked "do you see the person in the courtroom today who robbed you back on June 1st of 1991?" Riggins said she did, and pointed to appellant. The State asked that the record reflect that the witness identified appellant and the court granted the request. On cross-examination, Riggins testified the robber was right-handed. Appellant testified he is left-handed.

■ Again appellant's counsel did not object to either Berry's or Riggins' testimony. In addition, it is possible a motion in limine would have excluded Berry's and Riggins' testimony. An accused may not be tried for some collateral crime or for being a criminal generally. *Stafford v. State*, 813 S.W.2d 503 (Tex.Crim.App.1991). If an extraneous transaction is relevant, the evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. TEX. R.CRIM.EVID. 403. Although appellant was on trial only for robbing the Shell service station, three trials were actually conducted: the Shell service station robbery that occurred on June 15, 1991; the Whataburger restaurant robbery that occurred on

June 20, 1991; and the McDonald's restaurant robbery that occurred on June 1, 1991.

During closing arguments, the State said that the car used at the McDonald's and Whataburger robberies was similar to the car used at the Shell station robbery and that the evidence is "positively there to help you if there's some question at all in your mind about the identity of the [appellant]...." Also in closing, the State said, "... [appellant] says he wasn't at any of the 16 places where people had guns stuck in their faces and they were robbed...." Appellant's attorney objected by saying "Your Honor, I think the testimony was 14, not 16, from Sergeant Smart." The court responded, "That's overruled."

■ A motion in limine is a protective order against prejudicial questions and statements. If appellant's trial counsel had filed a motion in limine, appellant's alleged oral confession, Officer Smart's hearsay testimony and possibly Riggins and Berry's highly prejudicial testimony about extraneous offenses, would not have been admitted into evidence.

In his third example, appellant complains trial counsel failed to view the lineup videotape until trial was in progress. During trial, appellant's counsel asked Officer Smart if he had the videotape of a lineup in which both appellant and his brother, Clarence, appeared. Officer Smart said he had the videotape in the office in the back. Counsel then told the court "Your Honor, I'd like to have access to the videotape if we could." Appellant argues this exchange indicates trial counsel did not view the videotape of the lineup until the trial was in progress. We disagree. This does not necessarily indicate appellant's counsel had not viewed the videotape prior to trial. Instead, the record indicates appellant's counsel was attempting to establish that the lineup was prejudicial to appellant. After attempting to elicit testimony that other participants in the lineup were of darker complexion and were shorter than appellant, counsel chose to play the videotape for the jury. Because counsel believed the lineup was tainted, he should have filed a

pre-trial motion to suppress testimony about the lineup.

In his fourth example, appellant complains there was a conflict of interest because counsel represented both appellant and appellant's brother, a co-defendant. Counsel was hired by appellant and his brother, Clarence. Before appellant's trial, counsel requested a severance from Clarence's trial on the grounds that Clarence might be called as a witness either for or against appellant. Such occurrence never materialized. On the hearing on appellant's motion for new trial, the following exchange occurred between appellant's counsel and the court:

COURT: ... if I recall the history of this proceeding, you came in hired by both, and at the first trial, when they should have been tried together, neither of these two had any prior convictions. There was some allegation of petition for severance, and they were severed at that time.

APPELLANT'S COUNSEL: Yes, sir.

COURT: Have they been tried together or would have been in Trial No. 1, and I believe some allegations may have been that one would be a witness for the other. That didn't materialize, did it?

APPELLANT'S COUNSEL: I expressed fear as it may have been a conflict between the brothers if both were tried together in terms of one trying to lay blame on another, so that was the basis for me asking for severance, ....

COURT: If that were the case, you shouldn't have been on the case from the beginning, if that was any possibility, but did you recently believe anything like that was going to surface?

APPELLANT'S COUNSEL: Well, I was not certain. I knew there were mutual alibis in terms of one brother supporting the other.

COURT: I am sure that didn't materialize afterwards. Nobody came in and testified along those lines?

STATE: That is correct....

COURT: And Clarence Wenzy was tried second?

STATE: Yes, Your Honor.

■■■ The Court of Criminal Appeals has frequently held that representation by the same attorney of multiple defendants in the same criminal trial amounts to ineffective assistance of counsel. *James v. State*, 763 S.W.2d 776, 778–79 (Tex.Crim.App. 1989). Appellant's case and the case against Clarence were severed before appellant's trial began and appellant's trial was conducted before Clarence's trial. Clarence did not appear as a witness either for the State or for appellant. Although the two trials were severed, the same counsel represented both appellant and appellant's brother.

■■■ An actual and significant conflict of interest exists when "one defendant stands to gain significantly by counsel adducing probative evidence or advancing plausible arguments that are damaging to the cause of a co-defendant whom counsel is also representing." *Id.* at 779 (citing *Foxworth v. Wainwright*, 516 F.2d 1072 (5th Cir.1975). When counsel is placed upon the "horns of a dilemma" as to services for one client over another, an actual and significant conflict exists and each client must be made aware of such conflict before the attorney may ethically proceed with the case. *Id.*

■■■ Appellant does not address the issue, but presumably, appellant's counsel may have been prevented from calling Clarence as a witness because Clarence would have been required to either implicate his brother or himself. Although there appears to be a conflict of interest, appellant must object at trial and must particularize the nature of the conflict. *Wilson v. State*, 786 S.W.2d 74, 76 (Tex.App.—El Paso 1990, no pet.). When a defendant does not object at trial to the multiple representation, he or she is required to show some actual and not merely speculative conflict of interest. *James*, 763 S.W.2d at 778–79. Appellant has failed to do this.

■■■ We find appellant's examples standing alone do not demonstrate ineffective assistance. But, when the examples are reviewed in their totality, it is clear

**58**

appellant's counsel did not render reasonably effective assistance and counsel's deficient performance prejudiced appellant. Counsel's errors were so serious that appellant was deprived of a fair trial, a trial whose result is reliable. We are not sure whether the jury reached its verdict based on testimony about the Shell service station robbery; Berry's testimony about the Whataburger robbery; Riggins' testimony about the McDonald's robbery; Officer Smart's testimony that appellant was in violation of parole; Officer Smart's testimony that 14 cases had been cleared by appellant's arrest; Officer Smart's testimony about appellant's alleged oral confession; testimony about a potentially tainted lineup; or counsel's failure to call appellant's brother as a witness.

Appellant's sole point of error is granted. Accordingly, we reverse the judgment of the trial court and remand for a new trial.