

# NUMBER 13-13-00488-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**VICTOR PRIETO AZAMAR,**                                                   **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                     **Appellee.**

---

### On appeal from the 430th District Court
### of Hidalgo County, Texas.

---

# MEMORANDUM OPINION

**Before Justices Garza, Benavides, and Perkes**
**Memorandum Opinion by Justice Benavides**

A Hidalgo County grand jury indicted appellant, Victor Prieto Azamar, for the

aggravated sexual assault of his step-granddaughter, A.C.[1]  *See* TEX. PENAL CODE ANN.

---

[1] In order to protect the complainant's identity, we will use her initials throughout this memorandum opinion.

§ 22.021 (West, Westlaw through 2013 3d C.S.). Azamar pleaded not guilty, but was found guilty as charged by a jury and sentenced to forty years' imprisonment. By seven issues, Azamar asserts that: (1) the trial court erred by denying his motion for a mistrial during jury selection; (2) the evidence is insufficient to sustain his conviction because it fails to establish the corpus delicti of the offense alleged in the indictment; (3) the evidence is legally and factually insufficient to sustain his conviction; (4) trial counsel provided ineffective assistance by not objecting to alleged hearsay testimony; (5) the trial court erred by admitting medical records; (6) the trial court erred by allowing a witness to testify as an expert; and (7) the aggregate effect of the cumulative errors made by trial counsel and the trial court negatively affected his substantial rights. We affirm.

## I. BACKGROUND

On February 26, 2013, two-year-old A.C. approached her mother, Martha, crying and complaining that her "cookie" hurt. Martha testified that A.C. used the word "cookie" to identify her vagina. Martha inspected A.C.'s vagina, and it appeared red, so Martha applied rash cream to the affected area. The next day, A.C. continued to complain about the pain and told her mother that her vagina hurt because "Ken poked her with a stick." Martha testified that A.C. called Azamar "Ken" as a "special name" and was the only person who called Azamar by that name. Later that day, Martha took A.C. to her primary caregiver, nurse practitioner Michelle Chavez, at Divine Children's Clinic in Donna, Texas.

Martha testified that prior to her complaints, A.C. last saw Azamar on February 24, 2013 at Azamar's home in Donna. Azamar lived at the home with A.C.'s grandmother, Maria Castillo. According to Martha, she dropped off A.C. at Azamar's home that morning and witnessed Azamar greet A.C. at the front door of his home. Martha

2

admitted to the jury that she did not believe the allegations against Azamar because A.C. did not complain about pain to her vagina until two days after her visit with Azamar. Additionally, Martha testified that she needed more "proof" that A.C. was hurt.

Chavez testified that she has treated A.C. since A.C.'s birth in 2010. On February 27, 2013, A.C. presented to Chavez's clinic with symptoms of pain during urination. A.C. told Chavez that her "cookie" hurt and pointed to her vagina. Martha told Chavez that A.C. had told her that "Ken had touched her 'cookie' with a *palo*."[2] According to Chavez, A.C. told her that Azamar "poked" her "cookie" outside of her grandmother's house, after Azamar took off her dress and lowered his own clothes. Chavez further testified that A.C. told her that Azamar's "stick" was not in his hand and was located in between his legs.

Chavez examined A.C.'s vagina and noted no external trauma, but observed redness on A.C.'s labia majora and labia minora. Chavez noted that the redness she observed was different from a diaper rash and more indicative of sexual assault and trauma. Chavez examined beyond A.C.'s labia minora and observed that the area known as the introritus was "beefy and red" as well as tender and sensitive. Chavez testified that after examining A.C., she advised Martha to file a police report. Elvia Mungia, a sexual assault nurse examiner (SANE) at the Child Advocacy Center of Hidalgo County, testified that she also examined A.C. According to Mungia, she observed a fissure and redness on A.C.'s hymen, which indicated trauma resulting from penetration.

---

[2] "Palo" is a Spanish word translated to "stick" in English.

Steve Moyar, an investigator with the Hidalgo County Sheriff's Office, testified that he investigated the allegations made against Azamar. During his investigation, Moyar attempted to speak to A.C., but A.C. was uncomfortable speaking with him. Moyar also interviewed Azamar, who denied the allegations, had no explanation for A.C.'s vaginal injuries, offered no motive for A.C. to fabricate the allegations against him, and identified no other people who might have committed the crime. Moyar eventually placed Azamar under arrest.

Maria Castillo, Azamar's wife, testified in his defense. Castillo denied that Azamar committed any of the alleged acts against A.C. because A.C. was with Castillo the entire day of February 24, 2013. Castillo also testified that A.C. never complained to her about anything that day. Additionally, Castillo's three daughters, Benita Aguirre, Irene Avila, and Elizabeth Yzquierdo, and one son, Saul Alvarado, all testified in Azamar's defense and denied that Azamar was capable of committing the alleged acts. Azamar did not testify.

The jury found Azamar guilty as charged and sentenced him to forty years' imprisonment with the Texas Department of Criminal Justice's Institutional Division. This appeal followed.

## II. SUFFICIENCY CHALLENGE

By Azamar's second and third issues, Azamar asserts that the evidence is insufficient to sustain his conviction.[3]

---

[3] We will address Azamar's issues out of the order in which they were presented because we generally first address points that, if sustained, would require us to reverse and render rather than reverse and remand. *See* TEX. R. APP. P. 43.3 (the appellate court must render except when remand is necessary); *Lucas v. State*, 245 S.W.3d 611, 612 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd).

4

## A.  Standard of Review and Applicable Law[4]

In reviewing sufficiency of evidence to support a conviction, we consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt.  *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013); *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.).  In viewing the evidence in the light most favorable to the verdict, we defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony.  *Brooks*, 323 S.W.3d at 899.  It is unnecessary for every fact to point directly and independently to the guilt of the accused; it is enough if the finding of guilty is warranted by the cumulative force of all incriminating evidence. *Winfrey*, 393 S.W.3d at 768.

The elements of the offense are measured as defined by a hypothetically correct jury charge.  *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).  Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily

---

[4] By his third issue, Azamar challenges the factual and legal sufficiency of the evidence supporting his conviction.  The Texas Court of Criminal Appeals has held that there is "no meaningful distinction between the *Jackson v. Virginia* legal sufficiency standard and the *Clewis* factual-sufficiency standard" and that the *Jackson* standard "is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt."  *Brooks v. State*, 323 S.W.3d 893, 902–03, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  Accordingly, we will review Azamar's claims of evidentiary sufficiency under a "rigorous and proper application" of the *Jackson* standard of review.  *Id.* at 906–07, 912.

increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* Under a hypothetically correct jury charge, Azamar is guilty of aggravated sexual assault if he intentionally or knowingly caused the penetration of A.C.'s sexual organ by any means, and A.C. is a child younger than fourteen years of age. *See* TEX. PENAL CODE ANN. § 22.021.

## B. Discussion

Azamar first argues that the evidence is insufficient to sustain his conviction "because it fails to establish the corpus delicti of the offense alleged in the indictment." The corpus delicti rule is one of evidentiary sufficiency affecting cases in which there is an extrajudicial confession. *Miller v. State*, No. PD-0038-14, 2015 WL 1743581, at *5 (Tex. Crim. App. April 15, 2015); *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013). The rule states that when the burden is beyond a reasonable doubt, a defendant's extrajudicial confession will not be legally sufficient evidence absent independent evidence of the corpus delicti. The purpose of this common-law rule is to "ensure that a person would not be convicted based solely on his own false confession to a crime that never occurred." *Carrizales v. State*, 414 S.W.3d 737, 740 (Tex. Crim. App. 2013). Azamar contends that Investigator Moyar's testimony regarding Azamar's failure to offer other suspects who may have assaulted A.C. amounted to an "extrajudicial admission" to trigger the corpus delicti rule. We disagree. In order for the rule to be applicable, some sort of confession admitting culpability must first be made by the accused. *See, e.g., Salazar v. State*, 86 S.W.3d 640, 642–43 (Tex. Crim. App. 2002) (applying the corpus delicti rule to a defendant who admitted to police that he sexually

6

abused children). In this case, Azamar neither confessed nor admitted to any crime. Thus, without any extrajudicial confession or admission, the corpus delicti rule is inapplicable. Azamar's second issue is overruled.

Azamar next asserts a general argument that the evidence is legally insufficient to sustain his conviction. We disagree. The record shows that on February 26, 2013, A.C. complained to her mother that her vagina hurt because Azamar "poked her with a stick." Martha explained that A.C. was left in Azamar and her maternal grandmother's care two days earlier at Azamar's home. Nurse practitioner Chavez examined A.C. the following day and testified that A.C. related the same story to her about Azamar poking her with a "stick" in her vagina outside of his house. When Chavez asked A.C. whether Azamar was holding the stick, A.C. stated no and indicated that Azamar's "stick" was located between his legs. Furthermore, medical testimony from Chavez indicated that A.C. suffered trauma to her vagina, and SANE nurse Mungia testified that the trauma to A.C.'s vagina was caused by penetration. Finally, the record is undisputed that A.C. was two years old at the time the alleged abuse took place. After considering this evidence in the light most favorable to the verdict, we conclude that, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found that Azamar was guilty of aggravated sexual assault beyond a reasonable doubt. *See Winfrey*, 393 S.W.3d at 768; *see also* TEX. PENAL CODE ANN. § 22.021. Azamar's third issue is overruled.

### III. MOTION FOR MISTRIAL DURING JURY SELECTION

By his first issue, Azamar contends that the trial court erred by denying his motion for a mistrial during the jury selection phase of the trial.

7

**A.    Standard of Review and Applicable Law**

"A mistrial is an appropriate remedy in 'extreme circumstances' for a narrow class of highly prejudicial and incurable errors."   *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009) (quoting *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004)). A mistrial halts trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile.   *Id.*   Whether an error requires a mistrial must be determined by the particular facts of the case.   *Id.*

We review a trial court's denial of a mistrial for an abuse of discretion.   *Id.* In doing so, we view the evidence in the light most favorable to the trial court's ruling and consider only the arguments made to the trial court at the time of the ruling.   *Id.*   We will uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Id.*

**B.    Discussion**

The underlying dispute in this issue concerns the empanelment of juror Juan Carlos Hernandez.   During voir dire, Hernandez initially stated that he could not be fair to Azamar because of Hernandez's prior work history with the McAllen Police Department's warrant section.   Later, in a private bench conference with the trial court and attorneys for both sides, Hernandez stated that, upon thinking about the question, he decided that he could be fair and impartial to both the State and Azamar.   Azamar's trial counsel then moved to strike Hernandez for cause based upon his initial response during voir dire, which the trial court denied.   After the jury was empaneled, Azamar's trial counsel engaged in the following colloquy with the trial court outside of the jury's presence:

8

| | |
|---|---|
| [Defense Counsel]: | I just wanted to make sure that Juror No. 23, Juan Carlos Hernandez, was not excused by agreement. |
| Deputy Clerk: | He's on there.   Juan Carlos Hernandez. |
| Trial Court: | Yeah.   But as to my list—as to which ones were excused by agreement?   That's the Court's copy.   Which one is that? |
| Deputy Clerk: | No. 23. |
| [Prosecutor]: | He was not. |
| Trial Court: | That was okay.   The defense challenge for cause was denied.

You challenged for cause, and I denied it so he was one of the ones that—and I skipped him when I said—the I [sic] ones I excused.   I went from 22 to 24. |
| [Defense Counsel]: | For the record, I had initially struck [Hernandez], thinking that I needed to exercise a peremptory. I looked at my column on the left where it says: I had checked off that he had been excused by agreement.   I remember that he was not excused by agreement. |
| Trial Court: | Right. |
| [Defense Counsel]: | And as a result of that—I used that strike on Juror No. 19, Janet Abbey Flores, and I struck her. |
| Trial Court: | Uh-huh. |
| [Defense Counsel]: | So I misstruck [sic] a person.   And based upon that, I am asking the Court to declare a mistrial in this case. |
| Trial Court: | That will be denied.   But you have a record of it. . . . |

Azamar argues on appeal that as a result of his trial counsel's error, he was denied

9

an impartial jury, and was entitled to a mistrial.   We disagree.   Azamar's trial counsel failed to articulate how Hernandez's empanelment was highly prejudicial to his rights, or how it deprived him of a fair and impartial jury so as to warrant the granting of a mistrial. *See id.*   To the contrary, Hernandez clarified his position to the trial court and stated that he could be a fair and impartial juror to both the State and Azamar.   Therefore, after viewing the evidence in the light most favorable to the trial court's ruling and considering only the arguments made to the trial court at the time of the ruling, we hold that the trial court did not abuse its discretion in denying Azamar's motion for mistrial.   *See id.* Azamar's first issue is overruled.

## IV.   INEFFECTIVE ASSISTANCE OF COUNSEL

By his fourth issue, Azamar asserts that his trial counsel provided ineffective assistance by not objecting to hearsay testimony.

## A.   Standard of Review and Applicable Law

To prevail on a claim of ineffective assistance of counsel, the defendant must meet the heavy burden of *Strickland v. Washington*, 466 U.S. 668 (1984).   Under *Strickland*, the defendant must show by preponderance of the evidence that: (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that the result of the proceeding would have been different but for the attorney's deficient performance.   *Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986) (en banc) (citing *Strickland*, 466 U.S. at 694); *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.—Corpus Christi 2006, no pet).   Allegations of ineffectiveness must be "firmly founded in the record."   *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).   A "convicted defendant making a claim of ineffective

assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. We look to "the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel." *Thompson*, 9 S.W.3d at 813. If the appellant fails to prove one prong of the test, we need not reach the other prong. *See Strickland*, 466 U.S. at 697; *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

In evaluating the first prong of *Strickland*, counsel's competence is presumed and the defendant must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action could not have been based on sound strategy. *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). "A vague inarticulate sense that counsel could have provided a better defense is not a legal basis for finding counsel constitutionally incompetent." *Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002). The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.*

## B.  Discussion

Azamar specifically complains that his trial counsel failed to object to the testimony of nurse practitioner Chavez. Azamar asserts that Chavez was the State's "main witness," whose testimony was full of "prejudicial hearsay evidence" of what A.C. told Chavez during her medical examination. In support of his argument that his trial counsel was ineffective by failing to object to Chavez's testimony, Azamar cites various cases. *See Williams v. State*, 662 S.W.2d 344, 346 (Tex. Crim. App. 1983); *Cude v. State*, 588 S.W.2d 895 (Tex. Crim. App. 1979); *Brown v.* State, 974 S.W.2d 289; *Wenzy v. State*,

855 S.W.2d 52, 58 (Tex. App.—Houston 1993, pet. ref'd). However, we find these cases inapplicable because each case relates to counsel's failure to object to testimony about extraneous offenses, not alleged hearsay.

Here, the success of Azamar's argument is contingent upon a preliminary finding that Chavez's testimony was inadmissible hearsay. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. *See* TEX. R. EVID. 801(d). However, several exceptions to the rule against hearsay are provided by Rule of Evidence 803. Among these exceptions is a statement that is made for—and is reasonably pertinent to—medical diagnosis or treatment that describes medical history, past or present symptoms or sensations, their inceptions, or their general cause. *See id.* R. 803(4). Chavez testified to what A.C. told her during her medical examination, including that Azamar had poked her with a "stick" in her vagina. This testimony, while hearsay, fell under the Rule 803(4) exception because it was made during A.C.'s February 27, 2013 medical examination by Chavez. *See id.* Thus, even if Azamar's trial counsel had objected to Chavez's testimony, such objection would have likely been overruled pursuant to Rule 803(4).

Accordingly, we conclude that Azamar failed to rebut the presumption that his trial counsel's failure to object on hearsay grounds to Chavez's medical testimony was reasonable under prevailing professional norms and that it was based on sound strategy. *See Kimmelman*, 477 U.S. at 384. We overrule Azamar's fourth issue.

## V. ADMISSION OF MEDICAL RECORDS

By his fifth issue, Azamar asserts that the trial court abused its discretion by overruling his authentication objections to the admissibility of A.C.'s medical records.

12

**A.      Standard of Review and Applicable Law**

To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.   TEX. R. EVID. 901(a).   The trial court need not be persuaded that the proffered evidence is authentic.   *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012).   The preliminary question for the trial court to decide is simply whether the proponent of the evidence has supplied facts that are sufficient to support a reasonable jury determination that the evidence he has proffered is authentic.   *Id.*   We review a trial court's ruling on the admissibility of evidence for an abuse of discretion.   *Id.*   If the trial court's ruling that a jury could reasonably find proffered evidence authentic is at least within the zone of reasonable disagreement, we will not disturb the trial court's ruling.   *Id.*

**B.      Discussion**

On appeal, Azamar solely argues that the trial court abused its discretion in overruling his authenticity objection.   Therefore, we will only review the trial court's ruling related to Azamar's authenticity objection.   *See* TEX. R. APP. P. 47.4.   Prior to the admission of the medical records, Chavez testified that she was not the custodian of the records, and Azamar objected.   The State argued that the medical records were business records, and the trial court admitted the records over Azamar's objections. Azamar argues that because "evidentiary prerequisites for self-authentication or alternate predicates of admissibility" were not met in this case, the trial court abused its discretion in admitting the evidence.   We disagree.

The State laid a sufficient predicate to admit the medical records by eliciting testimony from Chavez that the records offered were Chavez's notes made during A.C.'s

13

February 27, 2013 visit. Chavez testified that she created the documents, that the handwriting was hers, and that the records were created during A.C.'s medical examination. Accordingly, we hold that the trial court's ruling was within the zone of reasonable disagreement, and it did not abuse its discretion in admitting the evidence over Azamar's objection. *See Tienda*, 358 S.W.3d at 638. We overrule Azamar's fifth issue.

## VI. EXPERT TESTIMONY

By his sixth issue, Azamar argues that the trial court abused its discretion in qualifying Chavez as an expert in women's health care and in pediatrics over his objection.

### A. Standard of Review and Applicable Law

The special knowledge which qualifies a witness to give an expert opinion may be derived from specialized education, practical experience, a study of technical works, or a varying combination of these things. *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000) (citing *Penry v. State*, 903 S.W.2d 715, 762 (Tex. Crim. App. 1995)); *see* TEX. R. EVID. 702. The question of whether a witness offered as an expert possess the required qualifications rests largely in the trial court's discretion. *Wyatt*, 23 S.W.3d at 27. Absent a clear abuse of that discretion, the trial court's decision to admit or exclude testimony will not be disturbed. *Id.* The party proffering the expert witness bears the burden of showing that the witness is qualified on the specific matter in question. *Id.*

### B. Discussion

Azamar argues that because Chavez lacked published works in the field of nursing and pediatrics and lacked expertise, training, or certification to perform sexual assault

14

examinations, the trial court abused its discretion in recognizing her as an expert in women's health care and pediatrics. We disagree.

Prior to being tendered as a testifying expert in the field of women's health care and pediatrics, Chavez testified that she graduated as valedictorian of her licensed vocational nursing class in 1989, became a registered nurse after graduating from the "University of New York," and received her nurse practitioner's license in 2001 after graduating from the University of Texas Southwestern Medical Center in Dallas. Furthermore, Chavez testified that she is a board certified nurse practitioner in women's healthcare, which includes the examination of children. Chavez also testified that she was certified to examine patients under the Texas Health Steps Program, which requires all Medicaid recipients to receive physical exams and immunizations from birth until the age of twenty-one. Finally, Chavez testified over the last nine years, she has examined approximately 2,400 children annually.

Azamar is correct that Chavez has not published any written works in the field of nursing and pediatrics and that she is not certified to conduct sexual assault examinations. However, when exercising its discretion to certify a witness as an expert, the trial court examines the witness's specialized education, practical experience, study of technical works, or a varying combination of these things. *Wyatt*, 23 S.W.3d at 27. We conclude that the trial court acted within its discretion to certify Chavez as a testifying expert for the State in the field of women and pediatric health care based upon her specialized education, board certification, and practical experience in these fields. We overrule Azamar's sixth issue.

15

## VII.    Cumulative Error

By his seventh and final issue, Azamar asserts that "the aggregate effect of the cumulative errors by the trial court and Azamar's attorney [argued in his brief] have adversely affected his substantial rights to a fair and impartial trial."

While it is conceivable that a number of errors may be found harmful in their cumulative effect, no authority holds that non-errors may in their cumulative effect cause error.    *See Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999) (en banc).    Because we have no found no error in this appeal, we overrule Azamar's seventh issue.

## VIII.    Conclusion

We affirm the trial court's judgment.


GINA M. BENAVIDES,
Justice


Do not publish.
Tex. R. App. P. 47.2 (b).

Delivered and filed the
21st day of May, 2015.

16