PAUL PRESSLER, Justice.
Appellant was found guilty of aggravated robbery by the jury and the court assessed punishment at fifteen years and one day in the Texas Department of Corrections. We affirm.
Clail MacSorley testified that he was working as the manager of a Radio Shack store on June 9, 1982, when a man entered the store at about 8:10 p.m., and asked about some merchandise. The man was wearing a shirt with a logo of “Hair Factory” on one side and the name “Lonnie” on the other. After conversing for several minutes, the man said “You should have f_in remembered me,” and pulled a gun motioning MacSorley towards the cash drawer, saying “Get over there and give it to me.” MacSorley told the man that he would have to reach under the counter to open the cash drawer. The man replied, “open it.” While attempting to open the drawer, another employee, Jody Coles, entered the store. The man stuck the gun back into his pants and walked towards the front door saying “I am going to be cool; be cool, I don’t want no trouble.”
When the man got outside, MacSorley told Coles to call the police because there had been an attempted robbery. MacSor-ley followed the man outside and saw him walking in a manner which indicated that he could not make up his mind which way to go. The man went back inside the store and picked up his car keys off the counter telling Coles, “I don’t want no trouble.” The man then walked to a white Chrysler car and drove away. MacSorley copied down the license number which he later gave to the police. MacSorley identified the appellant. Coles testified that he saw appellant’s gun. Appellant admitted that he went to the Radio Shack around 8:00 or 8:10 p.m. in the car identified by MacSor-ley. However, appellant testified that he did not pull a gun, that he did not attempt to rob the store, and that he and MacSorley merely argued.
Appellant brings six grounds of error. In his first, he contends that his right to cross-examine a state’s witness was improperly curtailed by the trial court. While cross-examining the complaining witness, the following took place:
Q. Mr. MacSorley, do you have something against black people?
A. No, Sir.
Q. And have you ever stated or had feelings or oppositions to people of black race?
A. No, Sir.
Q. And there is nothing then in your past, as far ás you could tell, that would reflect that you would do anything toward a person solely for the reason that they were black?
A. No, Sir.
Mr. Newlin: Your honor, may I bring in the testimony which we discussed before the Court?
*541 The Court: Ladies and Gentlemen, pass into the Jury Room and we will call you back out shortly.
(At this time a short recess is taken and the following proceedings are had out of the presence of the jury.)
The Court: Could you bring me any witnesses that will impeach those three things that you’ve said; could do you (sic) that?
Mr. Newlin: To lay the predicate for that, I have to ask him those questions. Let me lay the predicate and I will get a witness that will come from Florida. I will get him here anytime. Let me lay the predicate and I will worry about getting the witness.
The Court: If you have any witnesses that could impeach him on those things, I will let you put those things on. But if you don’t have any witnesses—
Mr. Newlin: I have an absolute right to ask him about these things. There is a predicate laid; he said he has no racial problems.
The Court: If you could put on evidence to impeach that, you could do it.
Mr. Newlin: Now I am entitled to ask him about individual events and circumstances which refute the things, by his own testimony, that he’s testified to.
The Court: No, I will not let you do that. You could bring in any witnesses you want to bring in. Bring the jury out.
Generally great latitude should be allowed the accused to show a witness’ bias or a motive to falsify his testimony. Cloud v. State, 567 S.W.2d 801 (Tex.Crim.App.1978). However, trial courts have considerable discretion as to how and when bias may be proven and the extent to which a witness may be cross-examined for the purpose of showing bias. Carrillo v. State, 591 S.W.2d 876 (Tex.Crim.App.1979). Here the Court, in its discretion, permitted appellant to attempt to prove racial prejudice through the testimony of witnesses. Appellant did not produce any testimony to refute the complainant's testimony. The first ground of error is overruled.
In his second and third grounds of error, appellant argues that the court erred in failing to charge the jury on the lesser offenses of aggravated assault and assault. A two step procedure is used to determine whether a lesser offense should be included in the court’s charge. First, the lesser offense must be included within the proof necessary to establish the offense charged. Second, there must be some evidence in the record that if the defendant is guilty, he is guilty of only the lesser offense. See Royster v. State, 622 S.W.2d 442 (Tex.Crim.App.1981); Rogers v. State, 687 S.W.2d 337 (Tex.Crim.App.1985).
In claiming that he never pulled a gun, appellant presented evidence that he had committed no offense at all. Appellant is entitled to a charge on aggravated assault only if there was testimony that if guilty, he was guilty only of the lesser included offense. Any evidence concerning use of the gun included the testimony that appellant motioned MacSorley towards the cash drawer and said, “Get over there and give it to me.” Therefore, the evidence at trial established that if guilty at all, appellant was guilty of aggravated robbery. The fact that the state in proving aggravated robbery may also have proved a lesser offense does not entitle a defendant to a charge on the lesser offense. See Cordova v. State, 698 S.W.2d 107 (Tex.Crim.App.1985), Royster, supra.
Appellant also argues that the court should have charged the jury on the lesser crime of assault. However, assault requires one to intentionally or knowingly threaten another person with imminent bodily injury. According to appellant’s testimony, he shouted at complainant but did not threaten him with imminent bodily injury. Therefore, appellant has failed to establish that if he is guilty, he is guilty only of assault. The second and third grounds of error are overruled.
In his fourth ground of error, appellant contends that his conviction should be reversed because there is no evidence of the State’s consenting to his waiver of hav *542 ing the jury assess punishment. In Garza v. State, 479 S.W.2d 294 (Tex.Crim.App.1972), the court held that where the defendant originally requests the jury to assess punishment but then decided to allow the court to determine punishment, the defendant cannot challenge his conviction for the first time on appeal on the grounds that the state did not affirmatively consent. In not objecting, the State consented to appellant’s change of his selection. The fourth ground of error is overruled.
In his fifth ground of error, appellant complains that the evidence was insufficient to prove he was in the course of committing theft. The complaining witness testified that appellant pulled a gun, motioned him toward the cash drawer, and said “Get over there and give it to me.” After the complainant explained that he would have to reach under the counter to open the drawer, appellant said “open it.” Appellant left the store without taking anything only because another Radio Shack manager entered. In Johnson v. State, 541 S.W.2d 185 (Tex.Crim.App.1976), the court held there was sufficient evidence for the jury to find an intent to rob when a defendant and co-defendant pointed a gun at the manager of a store and asked for the keys to the back door even though they did not demand any money or merchandise. Here appellant not only pointed a gun at complainant but also demanded him to open the cash drawer. There is sufficient evidence of aggravated robbery. The fifth ground of error is overruled.
In his sixth ground of error, appellant complains that he did not receive reasonably effective assistance of counsel. In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court formulated guidelines by which such claims should be reviewed. Appellant must show that the trial counsel’s performance was so deficient that his assistance was not “reasonably effective,” and there must be a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. Thus, appellant must not only affirmatively prove errors on the part of trial counsel, but he also must show that the outcome of the case would have been different had those errors not been made.
Appellant claims that his counsel was shown to be ineffective by failing to object to the admission of an extraneous offense. The complainant testified that he was robbed the day before the robbery in question and identified appellant as the man who drove the get-away car in the prior robbery. The defense counsel did not object. Before trial, however, counsel asked that the prior robbery not be referred to as it was an extraneous offense. The Court said that he would instruct the State not to go into any evidence concerning the other offense unless it became material. The Court also required the State to come to the bench before offering any evidence about the other offense. At trial, the State approached the bench with defense counsel. The Court agreed to let evidence come in because the other offense helped explain appellant’s statement “You should have f_in remembered me.” It’s possible that the defense counsel did not object because he. did not want to make the jury think he was hiding something. Counsel does not render ineffective assistance because he used what another would consider a poor trial strategy. See Passmore v. State, 617 S.W.2d 682 (Tex.Crim.App.1981).
Appellant also contends that his counsel was ineffective because he failed to object to a portion of the State’s final argument. Isolated instances of failing to object do not necessarily mean that the counsel was ineffective. See Calloway v. State, 594 S.W.2d 440 (Tex.Crim.App.1980). A determination of whether counsel gave “reasonably effective assistance” of counsel must be based on the totality of counsel’s representation. This Court will not second-guess trial strategy. Isolated failures of the defense counsel will not sustain a claim of ineffective assistance of counsel. From the record before us, we conclude that defense counsel’s assistance was “rea *543 sonably effective,” and nothing counsel did or did not do prejudiced the outcome. The seventh ground of error is sustained.
The judgment of the trial court is affirmed.