TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00040-CR







Diana Dial, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT


NO. 97-569-K277, HONORABLE JOHN R. CARTER, JUDGE PRESIDING








 Appellant Diana Dial appeals her conviction for murder. See Tex. Penal Code
Ann. § 19.02(b)(1) (West 1994). Punishment was assessed by the jury at 60 years' imprisonment.


Points of Error


 Appellant advances seven points of error. Points one and six concern the
competency hearing conducted prior to the trial on the merits. Appellant contends that she was
denied a fair and impartial jury at the hearing because a venire-person was excused for cause
because of his distrust of psychiatric testimony. She also claims that the trial court denied her due
process at the competency hearing by excluding her written correspondence with the jail
administrator which demonstrated her mental state. In points of error four, five, and seven,
appellant complains of evidentiary rulings by the trial court admitting certain evidence, including
asking appellant whether she would assassinate the President of the United States. In points of
error two and three, appellant argues that the trial court erred in refusing to give (1) a jury charge
regarding the possibility of institutionalization for the mentally ill to rebut the testimony of Dr.
Coons, and (2) an instruction on the defense of a third party or parties. We shall consider the
points of error in the order in which we have listed them.


Background


 Appellant does not challenge the sufficiency of the evidence to support her
conviction. The record shows that in the morning of June 12, 1997, the 46-year-old appellant shot
and killed Wilbur Jackson Pharris, her landlord, with her own .38 caliber revolver. She called
911 and went outside to wait for the police. When the officers arrived, she told them where they
could locate the body and the gun. The autopsy shows that Pharris died from a gunshot wound
to the chest. The bullet had entered the lungs and the heart, and was extracted from the deceased's
back. The bullet was shown to have been fired by appellant's gun. Appellant told the officers that
she shot Pharris while he was seated at a table drinking coffee and reading a newspaper. The
medical examiner testified that the track of the bullet wound was consistent with appellant's
statement. Appellant informed the officers at the scene that she had fired a second shot. A second
bullet was found in the wall.

 Appellant had a bachelor's degree and was studying for a master's degree. She
worked as a librarian at the University of Texas until shortly before the shooting. She told
Sheriff's Captain Linda Bunte at the scene that "she knew that God would be mad at her, and that
she would probably go to prison and may possibly be executed for it." The record shows that
appellant had short-term hospitalizations for paranoid delusions. She had refused the medication
given to her on those occasions.

 Appellant testified that she was not insane. She told of her childhood in California,
her marriages, her sons, her divorce, and that she had assumed the last name of "Dial" after her
divorce; that she was an unpaid CIA agent who reported to the Joint Chiefs of Staff; that she left
Maine when a man began to stalk her and the police called her a prostitute when she reported the
stalking; that she came to Texas to study library science.

 Appellant answered an ad and rented a room from Jack Pharris in May 1996. Lena
Ward also lived at the same house. In late 1996, Pharris asked her to taste "something" he was
cooking, and after she did, he told her that he had poisoned her. In mid-May 1997 she began to
experience some of the same symptoms experienced by her grandfather and her mother-in-law
after they had been poisoned by a man named "Jack" and had developed Alzheimer's disease. She
began to notice furniture or other items in the Pharris house that belonged to her grandfather or
mother-in-law. Appellant came to believe that Jack Pharris was employed by an ancient Aryan
quasi-Nazi terrorist organization called the "House of Esau" that had been harassing her for years. 
The organization regarded appellant as a threat because of her vast knowledge in the academic
areas of religion, philosophy, and logic.

 Appellant had reported her poisoning and the activities of the terrorist organization
to the FBI, the Round Rock police, and the Williamson County Sheriff's Office. Without
receiving any support from these agencies, appellant decided to leave for Albuquerque to live with
her young sons in the time she had left to live. It was on the morning of her departure that the
shooting occurred. In her testimony, appellant added facts not previously revealed in her
extrajudicial confession and statements or to the doctors who interviewed her. She claimed that
before she shot Pharris, he had slammed her into a wall and that she acted in self-defense and to
protect her sons whom Pharris might eventually harm.

 Dr. George Parker, a psychologist, testified that appellant suffered from a
delusional disorder, and that on the day of the shooting appellant did not know it was wrong to
shoot Pharris. In rebuttal, Dr. Richard Coons agreed that appellant had a delusional disorder but
that she knew it was wrong to shoot Pharris. The jury rejected the defenses of insanity and self-defense as submitted in the court's charge.


Competency Hearing


 Prior to trial, a competency hearing before a jury was held. See Tex. Code Crim.
Proc. Ann. art. 46.02 (West 1979 & Supp. 1999). Appellant testified that she believed she was
competent, but did not know how long the competency would last because of the poison given her
by an ancient terrorist group. Dr. Richard Coons testified that appellant was competent to stand
trial. The jury found appellant competent to stand trial.


Excusal for Cause


 In the first point of error, appellant contends that she was denied a fair and impartial
jury at the hearing on competency to stand trial because the trial court "erroneously excused for
cause veniremember Pete Voytoveck based on Voytoveck's mistrust of psychiatric testimony."

 To preserve error for appellate review, a defendant must make a timely, specific
objection and obtain a ruling from the trial court. Tex. R. App. P. 33.1(a)(1)(A). No objection
was made to Voytoveck's excusal for cause. The failure to object to the alleged improper
exclusion of a veniremember waives any error on appeal. See Etheridge v. State, 903 S.W.2d 1,
8 (Tex. Crim. App. 1994), cert. denied, 516 U.S. 920 (1995); Gunter v. State, 858 S.W.2d 430,
445 (Tex. Crim. App.), cert. denied, 510 U.S. 921 (1993). Appellant's first point of error is
overruled.


Appellant's Letters Excluded


 In point of error six, appellant claims that the trial court denied her "the right to
due process in the adjudication of her claim of incompetency by excluding correspondence by
appellant which demonstrated her mental state." Appellant's exhibit number one at the
competency hearing, which was excluded, consisted of 17 notes written by appellant to the jail
administrator on "requests/complaints" forms.

 The exhibit contained numerous statements about Jack Pharris, the victim in the
murder with which appellant was charged. The prosecutor objected to the exhibit on a number
of grounds including that it was improper at a competency hearing to introduce evidence of the
offense itself. See Calloway v. State, 594 S.W.2d 440, 443 (Tex. Crim. App. 1980). Guilt or
innocence is not at issue in a competency hearing. The determination of competency must be
made uncluttered by evidence of the offense. See Firo v. State, 878 S.W.2d 254, 256 (Tex.
App.--Corpus Christi 1994, pet. ref'd) (citing Ex parte Hagens, 558 S.W.2d 457 (Tex. Crim.
App. 1977)).

 The trial court offered appellant's counsel an opportunity to redact all references
in the exhibit to the victim and the offense charged. Counsel declined and offered the entire
exhibit. The State's objections were sustained. Counsel then tendered the exhibit as an "offer of
proof" or informal bill of exception. See Tex. R. Evid. 103(a)(2). The party offering the
evidence has the burden to redact or sanitize a document to conform to the court's order before
the document or exhibit is admissible. See Firo, 878 S.W.2d at 256. Appellant is in no position
to complain of the exclusion of the exhibit. 

 Moreover, an examination of the exhibit shows requests for certain items or
complaints about jail matters which were irrelevant and inadmissible. See Tex. R. Evid. 402. 
Other notes in the exhibit were cumulative of appellant's earlier testimony at the competency
hearing and excludable. See Tex. R. Evid. 403. The State objected to the exhibit on both
grounds. The notes did contain appellant's written remarks about her court-appointed counsel. 
The trial court, apparently concerned these notes might be relevant to the competency hearing,
informed counsel that she could recall appellant, which she did. Appellant testified that she did
not trust her counsel, had seen counsel's family name on a list of individuals admitted into the
United States whose purpose was to work against the government, that counsel was possibly a
Nazi, and that appellant was reluctant to convey information to counsel. This testimony
corresponded to the written notes about counsel.

 We review the trial court's decision to admit or exclude evidence under an abuse
of discretion standard. See Green v. State, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996);
Montgomery v. State, 810 S.W.2d 372, 379-80 (Tex. Crim. App. 1990). We will not reverse a
trial court as long as the ruling was within the "zone of reasonable disagreement." See Green,
934 S.W.2d at 102; Montgomery, 810 S.W.2d at 391. The sixth point of error is overruled. (1)


Evidentiary Rulings-Trial on the Merits


A. Psychiatric Testimony


 In point of error four, appellant contends that the "trial court erred by permitting
Dr. Richard Coons to testify [that] appellant's reason for shooting the decedent did not meet the
legal definition of insanity."

 Dr. Coons was appointed by the trial court to conduct a competency and sanity
evaluation of appellant. After appellant presented a defense of insanity, Dr. Coons was called in
rebuttal by the State. His testimony established that he was an expert in psychiatry. Dr. Coons
explained that his evaluation of appellant included an interview. Appellant told Dr. Coons that
she knew she had been poisoned by Jack Pharris and would die from Alzheimer's disease; that she
decided to go to Albuquerque, New Mexico, and spend what time she had left with her sons; that
while packing her car she became angry with Pharris and decided that she could either go to
Albuquerque or get rid of "this guy" so he would not kill anyone else; that she had a choice of
spending a year or two with her children or shooting Pharris and spending the rest of her time in
jail; that she had not planned "to do this," but when Pharris came to the kitchen and made coffee
she went to her room and got her gun and shot him; that she did not shoot Lena Ward, another
roommate, because Pharris's death would be a lesson to her about participating in a terrorist
group.

 Dr. Coons testified that mentally ill people can make voluntary choices. He
concluded that appellant made a choice knowing what the legal consequences would be. The
record then reflects:


Q: Well, would it meet the definition of insanity if she made that choice because
she was angry?


A: No.



 Appellant objected claiming that the testimony invaded the province of the jury. 
The State urged that an expert witness can testify to the ultimate question. The objection was
overruled. The prosecutor then asked Dr. Coons:


Q: Is it -- does it meet the standards for the defense of insanity if we say that
someone killed someone because they had a mental illness and they were
angry?


A: No.



There was no objection to this question or answer.

 Appellant's record references are only to certain pages, and not to specific
questions. See Tex. R. App. P. 38.1(h). She contends that the State twice solicited a legal
conclusion from Dr. Coons that did not meet the legal definition of insanity. See Tex. Penal Code
Ann. § 8.01 (West 1994). (2) The objection to the first question and answer was that the testimony
invaded the province of the jury. Rule 704 provides:


Testimony in the form of an opinion or inference otherwise admissible is not
objectionable because it embraces an ultimate issue to be decided by the trier of
fact.



Tex. R. Evid. 704. The trial court did not abuse its discretion in admitting the evidence over the
objection made. See Fuller v. State, 819 S.W.2d 254, 258 (Tex. App.--Austin 1991, pet. ref'd).

 Moreover, there was no objection to the second question and answer. Nothing is
preserved for review. See Tex. R. App. P. 33.1(a)(1). A specific objection must be advanced
each time an offer of inadmissible evidence is made in order to preserve error for review. See
Miranda, 813 S.W.2d at 739. The sixth point of error is overruled.


B. Lay Opinion


 In point of error five, appellant urges that the trial court "erred in permitting the
State to elicit opinion evidence from Deputy Ralph Fisher regarding whether appellant knew it was
wrong to shoot the decedent on the day of the shooting." (Emphasis added.)

 Appellant directs us to certain record pages, but we do not find where the
complained-of evidence was elicited. Nothing is presented for review. We do find that Fisher,
a Williamson County deputy sheriff, was called as a State's rebuttal witness. On June 2, 1997,
ten days before the shooting, Fisher was called to the Round Rock police station to talk to
appellant. Fisher related that appellant complained of being poisoned by Jack Pharris, President
Clinton, and the President of the University of Texas, and that the poison was supposed to cause
Alzheimer's disease. Fisher examined the documents she gave him. He concluded that she had
mental problems. Three times Fisher quizzed appellant whether she intended to hurt herself or
anyone else. Each time she answered in the negative and indicated she would not harm Pharris.

 On redirect examination, Fisher testified that after talking to appellant on June 2,
1997, he thought she knew it would be wrong to kill Pharris. There was no objection to this
testimony. If this is the testimony complained of, then no error was preserved. See Tex. R. App. 
P. 33.1(a)(1)(A). The prosecutor did ask Fisher if he thought that appellant was going to kill
Pharris and he answered "No." The only objections to this question and answer were that Fisher
was not qualified to testify to "that" as he had not communicated with appellant after June 12th
(the day of the shooting). The objections were overruled.


 Thereafter, the State continued the interrogation without further objection:


Q: On June the 2nd of 1997, did you think she knew the difference between right
and wrong?


A: Yes.


Q: Do you think that she knew that day that it would be wrong to shoot and kill
Jack Pharris with a gun?


A: Yes.



On recross-examination, appellant elicited from Fisher that his opinion was based solely on his
fifteen minute conversation with appellant on June 2, 1997.

 Rule 701 permits a lay witness to express an opinion or inference. Tex. R. Evid.
701. The rule only requires that the offered lay opinion be based on the perception of the witness
and helpful to a clear understanding of the witness's testimony or the determination of a fact in
issue. Id. There is no stated requirement that it be necessary. See Hulen D. Wendorf, David A.
Schlueter and Robert R. Barton, Texas Rules of Evidence Manual V11-4 (3d Ed. 1994). A lay
witness may testify on the issue of sanity so long as the witness's inference or opinion is rationally
based on his perceptions of the defendant. See Pacheco v. State, 757 S.W.2d 729, 733 (Tex.
Crim. App. 1988). The perception requirement of Rule 701 is consistent with the personal
knowledge requirement of Rule 602 of the Rules of Evidence. See Fairow v. State, 943 S.W.2d
895, 898 (Tex. Crim. App. 1990). Ultimately, much must be left to the discretion of the trial
court under Rule 701. See Austin v. State, 794 S.W.2d 408, 410 (Tex. App.--Austin 1990, pet.
ref'd). The trial court's decision to admit or exclude lay opinion should be disturbed on appeal
only when the trial court has abused its discretion. See 2 Steven Goode, Olin Guy Welborn III,
& M. Michael Sharlot, Texas Rules of Evidence: Civil and Criminal § 701.2 at 9 (Texas Practice
1993).

 As a prerequisite to appellate review, the record must show a timely, specific
objection and a ruling by the trial court. See Tex. R. App. P. 33.01(a)(1)(A). The record does
not support the error complained of. Moreover, there were no objections to the related testimony
based on the June 2nd conversation. The fifth point of error is overruled.


C. The Assassination Question


 In point of error seven, appellant contends that the trial court erred in permitting
the State to ask her an improper and hypothetical question concerning whether she would
assassinate President Clinton.

 During the trial appellant raised the defense of insanity, which provides that "at the
time of the conduct charged, the actor, as a result of severe mental disease or defect did not know
that his conduct was wrong." Tex. Penal Code Ann. § 8.01(a) (West 1994). At trial, appellant
admitted that she shot Pharris, but explained that she did so because he had earlier poisoned her
and that he was working for a terrorist organization in which President Clinton was involved. She
believed that Clinton was protecting this organization and its members, and working with them
to drug and kidnap her. Although the insanity defense was raised, appellant personally claimed
to be sane.

 During cross-examination, the prosecutor approached the bench and informed the
trial court and opposing counsel that he intended to ask appellant whether, if given the
opportunity, she would kill President Clinton. He indicated the question was related to the
insanity defense. Defense counsel questioned whether the hypothetical inquiry was relevant, but
stated that she would withhold her objections until the appropriate time.

 The interrogation continued with appellant again asserting that President Clinton
supported the terrorist group and that his involvement constituted treason. The record then
reflects:


Q: Okay. If he is involved at that level, and you have the opportunity, wouldn't
you also kill him?


A: No.



Appellant's counsel then repeated the objections earlier suggested, and argued that what appellant
might do in the future was irrelevant because the real question was the state of appellant's mind
at the time of the offense. Counsel followed this argument with a Rule 403 objection. See Tex.
R. Evid. 403. All of the objections were overruled.

 On further cross-examination without objection, appellant was asked if it would be
wrong to shoot and kill the President, to which she replied that she was not interested in shooting
or killing anyone. When asked if it would be wrong to shoot or kill the President for treason, she
responded:  "It depends on the situation." When asked if the situation involved Jack Pharris, she
turned the question aside with the comment that the question was too hypothetical for her.

 Knowing where the prosecutor was headed, appellant's counsel did not object until
the complained-of question was asked and answered. The objection was not timely. See Tex. R.
App. P. 33.1(a). Moreover, substantially the same testimony without objection was elicited from
appellant. A specific objection must be made each time an offer of inadmissible evidence is made
in order to preserve any error for review. See Purtell v. State, 761 S.W.2d 360, 368 (Tex. Crim.
App. 1988), cert. denied, 490 U.S. 1059 (1989); Miranda v. State, 813 S.W.2d 724, 739 (Tex.
App.--San Antonio 1991, pet. ref'd). The improper admission of evidence is not reversible error
when the same facts are proved by other unobjected-to testimony. Anderson v. State, 717 S.W.2d
622, 626-27 (Tex. Crim. App. 1986); Thomas v. State, 916 S.W.2d 578, 580 (Tex. App.--San
Antonio 1996, no pet.). In fact, any error is waived. See Penry v. State, 691 S.W.2d 636, 655
(Tex. Crim. App. 1985), cert. denied, 474 U.S. 1073 (1986).

 Further, error may not be predicated upon a trial court's ruling that admits or
excludes evidence unless a substantial right of the party is affected. See Tex. R. Evid. 103(a). 
A "substantial right" is affected when the error had a substantial and injurious effect or influence
in determining the jury's verdict. See King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App.
1997); Coggeshall v. State, 961 S.W.2d 639, 643 (Tex. App.--Fort Worth 1998, pet. ref'd). 
Appellant's point of error seven is overruled.


Requested Jury Instructions


A.  A Charge to Rebut Evidence


 In point of error two, appellant complains that the "trial court erred in refusing to
include in the jury charge [at the guilt-innocence stage of trial] an instruction regarding the
possibility of institutionalization for the mentally ill in rebuttal to Dr. Coons's testimony that
institutionalization was not an available option."

 Appellant objected to the charge and requested an instruction setting out the
procedure for a civil commitment set forth in article 46.03, section 4(b) (3) which would follow a
verdict of not guilty by reason of insanity (NGI). Appellant insisted that the requested instruction
was essential to rebut testimony by Dr. Coons.

 Dr. George Parker, a psychologist, testified that appellant suffered from a
delusional disorder and did not know on June 12, 1997, that it was wrong to shoot and kill Jack
Pharris. He related that medication and psychotherapy are two treatments for any kind of mental
problem; that psychotherapy was unsuccessful with a person like appellant who does not believe
that anything is wrong with her; and that medication had not been successful in appellant's case,
either because she did not respond to the medication or had refused to take it. When asked what
could be done with a person suffering from the particular disorder in question where treatment was
difficult, Dr. Parker, over vigorous objection, testified ". . . hospitalization is what usually
happens, extremely long-term hospitalization, sometimes referred to as institutionalization."

 In rebuttal, the State called Dr. Richard Coons, a psychiatrist, who agreed that
appellant suffered from a delusional disorder. He testified, however, that appellant was sane and
knew it was wrong to kill Pharris. Dr. Coons, who had heard Dr. Parker's testimony, was asked
if he agreed with Parker's statement about "hospitals." He responded: "No, what Dr. Parker said
was 'lengthy hospitalization or what amounts to institutionalization' and that's basically not
available." Immediately thereafter, Dr. Coons, in response to the prosecutor's questions, testified
that the prison system had psychiatric hospitalization facilities for a person demonstrating a
psychiatric problem that required hospitalization, and these facilities were available as long as
needed. There was no objection to this testimony by Dr. Coons. Appellant sought rebuttal by
virtue of a jury instruction setting out the statutory procedure for civil commitment following a
verdict of not guilty by reason of insanity.

 Texas courts have consistently held that the statutes prescribing the disposition of
one found not guilty by reason of insanity are a guideline for the court and not for the jury's
consideration. See Granviel v. State, 552 S.W.2d 107, 122 (Tex. Crim. App. 1976); Holden v.
State, 643 S.W.2d 718, 721 (Tex. Crim. App. 1982); Zwack v. State, 757 S.W.2d 66, 69 (Tex.
App.--Houston [14th Dist.] 1988, no pet.). In 1983, the legislature specifically added section 1(e)
to article 46.03. See Act of August 29, 1983, 68th Leg., R.S., ch. 454, §§ 2, 3, 1983 Tex. Gen.
Laws 2640. The statute provides:


The court, the attorney for the state, or the attorney for the defense may not inform
a juror or a prospective juror of the consequences to the defendant if a verdict of
not guilty by reason of insanity is returned.



Tex. Code Crim. Proc. Ann. art. 46.03(1)(e) (West 1994). The statute has been held not to deny
fundamental fairness to a defendant in a criminal case. See Zwack, 757 S.W.2d at 69.

 The State argued at trial and now on appeal that the statute forbids the instruction
requested by appellant. On appeal, appellant urges that she was deprived of federal constitutional
due process by the failure to give the requested charge. There was no trial objection on this basis
nor does appellant challenge the constitutionality of the statute. A complaint on appeal must
comport with the trial objection. See Rezac v. State, 782 S.W.2d 869, 870 (Tex. Crim. App.
1990). An objection stating one legal basis may not be used to support a different legal theory on
appeal. Id. Moreover, a similar contention as presented by appellant was rejected in Robison v.
State, 888 S.W.2d 473 (Tex. Crim. App. 1994), cert. denied, 115 S. Ct. 2617 (1995). There, it
was held that a trial court is not required as a matter of Texas public policy to instruct juries as
to the consequences of a verdict of not guilty by reason of insanity. The matter should be left to
the legislature which has already spoken. Id. at 476-77 (citing Zwack, 757 S.W.2d at 69).

 In Robison v. Johnson, 151 F.3d 256 (5th Cir. 1998), the same defendant in the
earlier Texas case brought a federal habeas corpus proceeding and was denied relief by the district
court. On appeal, it was held that he did not make a substantial showing of denial of the claimed
constitutional right and was not entitled to a certification of appealability on whether the Texas
statute [article 46.03(e)] violated due process as applied in prohibiting him from informing the jury
of the consequences of a not guilty verdict by reason of insanity. In Robison, the jury was not told
by the prosecutor that petitioner would go free if it rendered such a verdict but only that the
petitioner would be relieved of responsibility, and the jury was instructed that it should not
consider the effect of such verdict. See also United States v. Levine, 80 F.3d 124 (5th Cir.)
(finding no violation of due process or right to a fair trial where prejudicial effect of prosecutor's
statement that "buy[ing] [Levine's] insanity defense" would mean that Levine "walk[s] out of this
courtroom a free man" was minimized by two instructions of the district court), cert. denied, 117
S. Ct. 83 (1996).

 Appellant relies upon Shannon v. United States, 512 U.S. 573, 587-88 (1994),
which she also cited at trial. In Shannon, the Supreme Court did not mention due process as a
basis for its decision. It was interpreting a federal statute under its supervisory power over federal
courts. The court held that (1) the Insanity Defense Reform Act of 1984 did not require giving 
an instruction as to the consequences of a verdict of not guilty only by reason of insanity, and (2)
such an instruction should not be given as a matter of general federal criminal practice, although
it may be necessary under certain limited circumstances, not applicable to the Shannon case, where
a witness or prosecutor tells the jury that an accused will go free if found not guilty only by the
reason of insanity. Shannon gives little comfort to appellant either on the law or the facts. We
do not deem it controlling.

 In the instant case, Dr. Coons never explicitly stated that appellant would go free
if a certain verdict was returned. The State never used the complained-of testimony in jury
argument. While there was no specific instruction to disregard the consequences of a NGI verdict,
the jury was instructed not to refer to or discuss any matter or issue not in evidence and not to
consider punishment in determining guilt or innocence. The jury was also informed that it was
the exclusive judge of the facts proved, the credibility of the witnesses, and the weight to be given
the testimony. In addition, during the voir dire examination of the jury panel, the State informed
the veniremembers that the law prohibited telling jurors of the consequences of a NGI verdict and
they were not to speculate or guess about the matter. Under all the circumstances, the trial court
correctly overruled the requested jury charge. Point of error two is overruled.


B.  Defense of a Third Party


 In point of error three, appellant argues that the trial court erred by refusing to
include in the jury charge an instruction regarding the defense of a third party.

 Appellant admitted that she shot Jack Pharris when he was unarmed and seated at
a kitchen table reading a newspaper. She claimed for the first time at trial that he had slammed
her against a wall causing her to use deadly force in self-defense. The jury was instructed on the
defense of self-defense. Appellant urges that the trial court erred in denying her request to include
an instruction on the defense of a third party or parties--namely her sons who were in New
Mexico at the time of the offense. She claims that the testimony of her fear that Pharris sometime
in the future would harm her sons entitled her to the charge requested.

 A defendant is entitled to a jury instruction on any defense raised by the evidence
regardless of the strength of the evidence. See Hayes v. State, 728 S.W.2d 804, 807 (Tex. Crim.
App. 1987). A defense is not submitted to the jury "unless evidence is admitted supporting the
defense." Tex. Penal Code Ann. § 2.03(c) (West 1994).

 Section 9.33 of the Texas Penal Code provides:


A person is justified in using force or deadly force against another to protect a third
person if:


 (1)  under the circumstances as the actor reasonably believes them to be, the
actor would be justified under Section 9.31 or 9.32 in using force or deadly
force to protect himself against the unlawful force or unlawful deadly force he
reasonably believes to be threatening the third person he seeks to protect; and


 (2)  the actor reasonably believes that his intervention is immediately necessary
to protect the third person.



Tex. Penal Code Ann. § 9.33 (West 1994) (emphasis added).

 Under section 9.33, a defendant must produce some evidence to show that she
reasonably believed unlawful deadly force was threatening the third person she sought to protect,
and that the defendant reasonably believed her intervention was immediately necessary to protect
the third person. See Henderson v. State, 906 S.W.2d 589, 595 (Tex. App.--El Paso 1995, pet.
ref'd). Under the defense of a third person, there must also be some evidence to show that the
accused reasonably believed that a reasonable person in the third person's situation would not have
retreated. Id.; see also Hughes v. State, 719 S.W.2d 560, 561 (Tex. Crim. App. 1986).

 Under the evidence, appellant was not entitled to a charge on the defense of her
sons in New Mexico, hundreds of miles away. The third point of error is overruled.

 The judgment is affirmed.



 

 John F. Onion, Jr., Justice

Before Justices Jones, Patterson and Onion*

Affirmed

Filed: May 6, 1999

Do Not Publish









* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. Although not raised or briefed, self-serving declarations of an accused are inadmissible in
her or his behalf unless they come under some recognized exception. See Singletary v. State, 509
S.W.2d 572 576 (Tex. Crim. App. 1974); see also Allridge v. State, 762 S.W.2d 146, 152 (Tex.
Crim. App. 1988) (demonstrating the rationale for rejecting post-arrest self-serving statements);
Sneed v. State, 955 S.W.2d 451, 453-54 n.4 (Tex. App.--Houston [14th Dist.] 1997, pet. ref'd).
2. Section 8.01 provides:


(a)  It is an affirmative defense to prosecution that, at the time of the conduct
charged, the actor, as a result of severe mental disease or defect, did not know that
his conduct was wrong.


(b)  The term "mental disease or defect" does not include an abnormality manifested only
by repeated criminal or otherwise antisocial conduct.
3. See Tex. Code Crim. Proc. Ann. art. 46.03, § 4(b) (West Supp. 1999).




regardless of the strength of the evidence. See Hayes v. State, 728 S.W.2d 804, 807 (Tex. Crim.
App. 1987). A defense is not submitted to the jury "unless evidence is admitted supporting the
defense." Tex. Penal Code Ann. § 2.03(c) (West 1994).

 Section 9.33 of the Texas Penal Code provides:


A person is justified in using force or deadly force against another to protect a third
person if:


 (1)  under the circumstances as the actor reasonably believes them to be, the
actor would be justified under Section 9.31 or 9.32 in using force or deadly
force to protect himself against the unlawful force or unlawful deadly force he
reasonably believes to be threatening the third person he seeks to protect; and


 (2)  the actor reasonably believes that his intervention is immediately necessary
to protect the third person.



Tex. Penal Code Ann. § 9.33 (West 1994) (emphasis added).

 Under section 9.33, a defendant must produce some evidence to show that she
reasonably believed unlawful deadly force was threatening the third person she sought to protect,
and that the defendant reasonably believed her interventi