In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00056-CV
______________________________


BRENDA K. JONES, Appellant
 
V.
 
ARK-LA-TEX VISITING NURSES, INC.,
d/b/a ARK-LA-TEX HOME HEALTH
AND HOSPICE CARE, Appellee


                                              

On Appeal from the 5th Judicial District Court
Bowie County, Texas
Trial Court No. 01-C-1518A-005


                                                 



Before Morriss, C.J., Ross and Hadden,* JJ.
Opinion by Justice Ross
*Roby Hadden, J., Sitting by Assignment


O P I N I O N

          Brenda K. Jones appeals from the dismissal of her medical malpractice lawsuit
against Ark-La-Tex Visiting Nurses, Inc., d/b/a Ark-La-Tex Home Health and Hospice Care
(Ark-La-Tex).


 The trial court dismissed her lawsuit because it found that the expert report
of Jonathan Walker, M.D., did not meet the requirements of or represent a good-faith effort
to comply with Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01.


 The court dismissed the case
with prejudice and ordered payment of $3,125.00 as attorney's fees to the defendant.
Background
          Jones alleged in her lawsuit she was admitted to Christus St. Michael hospital
July 27, 1999, for surgery and was subsequently discharged July 31, 1999. After her
discharge, she received home healthcare from Ark-La-Tex. She alleged that, during the
hospitalization and subsequent home healthcare, she was injured by a failure to properly
infuse fluids and drugs using an intravenous drip. Specifically, she alleged the hospital and
Ark-La-Tex were negligent by failing to "properly insert, maintain, monitor and/or change
the I.V. needle that proximately caused a right median nerve injury and neuropathy" of her
right arm. 
The Report
          In the report Jones filed, Walker states that the report is designed to give an opinion
about whether the appropriate standards of care were met by the hospital and by Ark-La-Tex, that he reviewed the records, and that he is qualified by "education, training and
experience in the same field or school of medicine as the health care providers for the
incident being reviewed." He then refers to his attached curriculum vitae and states that
he is board certified in psychiatry, neurology, and clinical neurophysiology, and that he has
extensive experience in treating chronic pain and the causes of pain. The report then goes
on to note that, while at the hospital, Jones had an I.V. in place in her right arm infusing an
antibiotic (Gentamycin) and that she at that time began and thereafter continued to exhibit
weakness of that arm, along with pain between her elbow and wrist.
          Walker states that, "The appropriate standard of care for the health care providers
when inserting and reinserting needles to allow I.V. fluids to be infused into the body is to
take care to not puncture the vein, to not infuse drugs such as Gentamycin rapidly, and to
prevent prolonged regional infusion of antibiotics such as Gentamycin." He went on to
explain that this particular antibiotic is a known neurotoxic substance and that the
prolonged use of Gentamycin, along with the release of the substance into the surrounding
tissues by the I.V., caused the nerve damage. 
Standard of Review
          Dismissal of a cause of action under Article 4590i, Section 13.01 is treated as a
sanction and is reviewed for an abuse of discretion. See Am. Transitional Care Ctrs. v.
Palacios, 46 S.W.3d 873, 877 (Tex. 2001). An abuse of discretion occurs when a trial
court acts in an arbitrary or unreasonable manner or without reference to any guiding rules
or principles. See Garcia v. Martinez, 988 S.W.2d 219, 222 (Tex. 1999). A trial court does
not abuse its discretion simply because it may decide a matter within its discretion
differently than an appellate court. Downer v. Aquamarine Operators, Inc., 701 S.W.2d
238, 242 (Tex. 1985). However, a trial court has no discretion in determining what the law
is or in applying the law to the facts. Thus, "a clear failure by the trial court to analyze or
apply the law correctly will constitute an abuse of discretion, . . . ." Walker v. Packer, 827
S.W.2d 833, 840 (Tex. 1992).
          Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(d) requires a plaintiff asserting a
healthcare liability claim to submit an expert report, along with the expert's curriculum vitae,
as to each physician or healthcare provider named as a defendant in the suit, no later than
the 180th day after filing suit. See Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(d). The
Act describes an expert report as a written report providing "a fair summary of the expert's
opinions . . . regarding applicable standards of care, the manner in which the care rendered
by the physician or health care provider failed to meet the standards, and the causal
relationship between that failure and the injury, harm, or damages claimed." Tex. Rev. Civ.
Stat. Ann. art. 4590i, § 13.01(r)(6).
          If a claimant furnishes a report within the time permitted, a defendant may file a
motion challenging the report. See Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(l). The
trial court shall grant the motion only if it appears to the court, after hearing, the report does
not represent a good-faith effort to comply with the statutory definition of an expert report. 
See Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(l); Palacios, 46 S.W.3d at 877–78.
          If a report omits any of the statutory elements, it cannot be a good-faith effort. 
Palacios, 46 S.W.3d at 879. A report that merely states the expert's conclusions about the
standard of care, breach, and causation is not sufficient. Id. In determining whether the
report represents a good-faith effort, the trial court's inquiry is limited to the four corners of
the report. Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(r)(6); Palacios, 46 S.W.3d at 878.
Analysis
          Walker's report provides considerable information specifying the nature of the injury,
how Walker believes it occurred, and the specific factor that was responsible for the injury. 
The question before this Court is: Is that sufficient? 
          Ark-La-Tex contends the report is inadequate for several reasons. It points out that
the doctor was not sufficiently shown to be knowledgeable about nursing standards to
opine as an expert in that area, that the doctor did not set out a standard of care for
nurses, and that the act he concluded was the cause of the injury (administration of
Gentamycin) was not within the control of the nurses, but of the prescribing physician.
          Reviewing the four corners of the document involved, we agree. The report fails to
state Walker's qualifications to give the standard of care for nurses monitoring a patient in
a home healthcare setting. The doctor's curriculum vitae is attached to the report and
shows Walker's work and educational background. It does not on its face, however,
contain information showing he is an expert on appropriate nursing care, and it does not
contain any language purporting to set out the standard of care appropriate for nurses
taking care of a patient at home.  
          The expert report must set forth an applicable standard of care and a breach of that
standard. Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(r)(6). As this Court has recently
recognized, identifying the standard of care is critical: whether a defendant breached his
or her duty to a patient cannot be determined absent specific information about what the
defendant should have done differently. Moore v. Sutherland, 107 S.W.3d 786, 790 (Tex.
App.—Texarkana 2003, pet. denied), citing Palacios, 46 S.W.3d at 875. 
          Walker's report specifies what the expert believes should have been done differently
and why, but it does not purport to set out a standard of care that must be met by this
particular type of provider. The report does not differentiate between what the hospital did
wrong and what the nurses did wrong. A reader cannot determine from the report what
actions occurred at the hospital or what occurred at Jones' home, and it also does not state
that the nursing staff was responsible for the acts resulting in the injuries. Thus, in the
language of Palacios, it fails to "inform the defendant of the specific conduct the plaintiff
has called into question." Palacios, 46 S.W.3d at 879. 
          In the absence of this information, we conclude the trial court did not abuse its
discretion by dismissing the lawsuit for failure to provide an adequate expert's report. 
          The judgment is affirmed.
 
                                                                Donald R. Ross
                                                                Justice

Date Submitted:      January 2, 2004
Date Decided:         February 10, 2004




gn: justify; margin-left: 0.5in; margin-right: 0.5in">[Prosecutor]: Still require the state to prove its case beyond a reasonable
doubt?

Rougeux's trial counsel's reasons for not objecting are not in the record.


 Based on the context of
the voir dire discussion, Rougeux's trial counsel could have decided not to object for strategic
reasons. 
            C.        Failure to Object to Irrelevant Evidence
            Rougeux argues his trial counsel allowed "an overwhelming amount of utterly irrelevant
evidence of about how you cut up, dilute and spread cocaine around so that the amount of cocaine
found on Mr. Rougeux (slightly less than 15 grams) could harm 'an untold amount' of people." The
failure to object to inadmissible evidence may give rise to ineffective assistance of counsel. The
State responds that this evidence was relevant to the jury's understanding the difference between a
user and a dealer. Because the evidence may be relevant and Rougeux's trial counsel may have
concluded the evidence was not worth an objection, counsel's failure to object could have been based
on legitimate trial strategy. 
            D.        Failure to Object to Oral Confession and Scales
            Rougeux next contends his trial counsel's performance was deficient because he failed to
object to an oral confession and other evidence establishing the intent to deliver. After Rougeux was
arrested and read his Miranda


 rights, Officer Foreman testified that he "talked to" Rougeux and that
Rougeux allegedly confessed to distribution of cocaine. Rougeux argues that the admission of this
confession violated Article 38.22 of the Texas Code of Criminal Procedure. See Tex. Code Crim.
Proc. Ann. art. 38.22, § 3 (Vernon 2005). In addition, Rougeux argues that several scales allegedly
found in Rougeux's apartment were introduced into evidence without objection even though they
were not disclosed during discovery. Because Rougeux's trial counsel did not object to the
introduction of the testimony concerning the confession or the introduction of the scales, Rougeux
argues counsel rendered ineffective assistance. The State argues the record does not establish that
the alleged confession was the result of a custodial interrogation. Foreman testified that he "talked
to the defendant" and that Rougeux had stated "he had sold $20 worth of cocaine" earlier that day. 
In addition, Foreman testified Rougeux admitted to having some drug paraphernalia. The record
does not clearly establish that the statements were the result of a custodial interrogation rather than
an admission against interest, res gestae of the arrest, or a statement volunteered without
interrogation. Because counsel's failure to object could have been based on strategic reasons and
trial counsel's reasons for failing to object are not in the record, we cannot conclude that Rougeux's
trial counsel's performance was so outrageous that no competent attorney would have engaged in it.
            Ineffective assistance of counsel claims must be evaluated based on the totality of the
circumstances. Strickland, 466 U.S. at 693; Welborn, 785 S.W.2d at 393. Under the totality of the
circumstances, we are unable to conclude Rouguex's trial counsel's performance was deficient. 
"Isolated failures to object to certain procedural mistakes or improper evidence or argument do not
constitute ineffective assistance of counsel." Wenzy v. State, 855 S.W.2d 52, 53 (Tex.
App.—Houston [14th Dist.] 1993, pet. ref'd). Rougeux was not entitled to errorless counsel. See
Ex parte Kunkle, 852 S.W.2d 499, 505 (Tex. Crim. App. 1993); Ex parte Welborn, 785 S.W.2d 391,
393 (Tex. Crim. App. 1990). Rougeux has failed to show his trial counsel's performance was so
outrageous that no competent attorney would have engaged in it.
            Further, Rougeux has failed to show a reasonable probability of a different result. Without
the scales, confession, or allegedly irrelevant testimony, Rougeux argues there is a reasonable
probability the jury would not have found that Rougeux had the necessary intent to deliver the
cocaine. When he was arrested, Rougeux was holding fourteen grams of cocaine and had over
seventy small plastic bags on his person. Approximately thirty of these plastic bags, which were
blue, were a size which Foreman testified would not be used for packaging of marihuana,


 but are
used for the packaging of cocaine or methamphetamine. In addition, Foreman testified that fourteen
grams of cocaine is more than a typical "user's amount" of cocaine and would not be used in "one
sitting." The amount of cocaine possessed by Rougeux was sufficient for "a whole lot" of sittings,
according to Foreman. Even without the allegedly inadmissible evidence, the jury was presented
with sufficient evidence to conclude beyond a reasonable doubt that Rougeux was guilty of
possession with the intent to deliver. We overrule Rougeux's second point of error.
            For the reasons stated, we affirm.
 

                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          November 9, 2005
Date Decided:             November 10, 2005

Do Not Publish