In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00044-CR


______________________________




RONNIE LEE ANDREWS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


Gregg County, Texas


Trial Court No. 33109-B




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 Ronnie Lee Andrews was convicted by a jury for possession of a controlled substance and
assessed a punishment by that jury of fifteen months' confinement in a state-jail facility. On appeal,
Andrews raises three points of error, maintaining that: (1) the evidence is legally insufficient, (2) the
evidence is factually insufficient, and (3) he received ineffective assistance of counsel.

Facts

 Officer Harry Christopher Clark, a traffic officer for the City of Longview Police Department,
was dispatched around one o'clock in the morning to a convenience store in Longview, Texas,
regarding a suspicious circumstance involving what was reported to involve a blue Ford LTD with
Colorado license plates. When Clark arrived, he found Andrews at that location, sitting at the wheel
of a blue Mercury Grand Marquis; he was accompanied in the car by Kelly Jones (seated in the front
passenger seat) and Stephanie Wiley (seated in the back seat). Officer Clark testified he detected the
odor of burning marihuana when he approached the Mercury. Nearby was a black Toyota with
Colorado license plates. (1) The occupants of the vehicles claimed that there was no reason for
suspicion, that they were merely sitting in the vehicles and talking with one another. When asked
by Officer Clark if he had any drugs in his possession, Andrews handed the officer a prescription
bottle that contained several different prescription medications. (2) At some time during the
confrontation, a second officer, Officer Niebert, arrived. A warrant check requested by Clark
revealed that an outstanding warrant existed for Jones's arrest for a parole violation. While in the
process of placing Jones under arrest on that outstanding warrant, Officer Clark observed Wiley
"reaching down between her legs doing something." The officers discovered a glass cylindrical pipe
typical of a pipe used to smoke crack cocaine and a leafy residue, which Clark believed to be the
remains of marihuana, in a cigar wrapper in the area of the car where Wiley had been seated. 

 The police officers further discovered a second glass pipe of the type often used for the
smoking of crack cocaine, which contained a small quantity of crack cocaine; the record is not clear
whether it was on the seat where Andrews had been seated or whether it was beneath that seat. 
Officer Clark testified that he could not recall whether any of the passengers remained in the vehicle
after Andrews exited the vehicle, but Andrews testified that Jones was still in the vehicle when he
exited the car. 

Legal Sufficiency

 In his first point of error, Andrews argues that the evidence is legally insufficient to sustain
his conviction because there was insufficient evidence to link him to the crack cocaine which was
found in the car in which he was located. In reviewing the legal sufficiency of the evidence, we view
all of the evidence in the light most favorable to the verdict and determine whether any rational trier
of fact could have found the essential elements of the crime beyond a reasonable doubt. Johnson v.
State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000).

 When an accused is not in exclusive possession of the place where contraband is found, it
cannot be concluded he had knowledge or control over the contraband unless there are additional
independent facts and circumstances which affirmatively link him to the contraband. Poindexter v.
State, 153 S.W.3d 402 (Tex. Crim. App. 2005); Brown v. State, 911 S.W.2d 744, 748 (Tex. Crim.
App. 1995). The "affirmative links" or "links" (3) must establish, to the requisite level of confidence,
that the accused's connection with the drug was more than just fortuitous. Brown, 911 S.W.2d at
747.

 When determining whether the requisite independent facts link the defendant to the
contraband, some recognized factors which courts should take into account include whether: 

 (1) the contraband was in plain view or recovered from an enclosed place; (2) the
accused was the owner of the premises or the place where the contraband was found;
(3) the accused was found with a large amount of cash; (4) the contraband was
conveniently accessible to the accused; (5) the contraband was found in close
proximity to the accused; (6) a strong residual odor of the contraband was present;
(7) the accused possessed other contraband when arrested; (8) paraphernalia to use
the contraband was in view, or found on the accused; (9) the physical condition of
the accused indicated recent consumption of the contraband in question; (10) conduct
by the accused indicated a consciousness of guilt; (11) the accused attempted to flee;
(12) the accused made furtive gestures; (13) the accused had a special connection to
the contraband; (14) the occupants of the premises gave conflicting statements about
relevant matters; (15) the accused made incriminating statements connecting himself
or herself to the contraband; (16) the quantity of the contraband; and (17) the accused
was observed in a suspicious area under suspicious circumstances.


Washington v. State, 215 S.W.3d 551, 554 (Tex. App.--Texarkana 2007, no pet.). 

 Andrews argues that the only evidence presented by the State to establish a link between him
and the cocaine was that he was the driver and owner (4) of the vehicle. The evidence, however,
established several other links of Andrews to the contraband. The contraband was found in close
proximity to Andrews, the driver, and easily accessible by him. In addition, Andrews admitted to
being addicted to cocaine and testified he has been addicted for "[m]aybe eight or ten years" and
testified he would "always be addicted." (5) Andrews had testified it had been a "[c]ouple of years or
so" since he had used crack cocaine before the arrest, but acknowledged that it was possible that he
had used it since he was arrested for the offense for which he was on trial. (6) On cross-examination,
Andrews admitted he was "paying out" on a ticket he received; although the testimony is not
definitive, this may have been for possession of a crack pipe. (7) The car in which Andrews was seated
also contained a strong odor of marihuana and was observed in a suspicious area under suspicious
circumstances. The number of links is not as important as the degree to which the independent facts
and circumstances tend to link the defendant to the controlled substance. Id. at 555. In other words,
the question to be answered is "whether there was evidence of circumstances, in addition to mere
presence, that would adequately justify the conclusion that the defendant knowingly possessed the
substance." Evans v. State, 202 S.W.3d 158, 161 n.9 (Tex. Crim. App. 2006). The independent
evidence is sufficient for the jury to tend to link the defendant to the controlled substance. 

 The evidence is legally sufficient to support Andrews's conviction. Shumate testified that
the substance in the second glass pipe that the officers found beneath the seat contained
approximately 0.04 grams of crack cocaine. We conclude that a rational trier of fact could have
found beyond a reasonable doubt that Andrews exercised care, custody, control, and management
over the contraband and that he knew the substance possessed was contraband. 

Factual Sufficiency

 In his second point of error, Andrews claims the evidence is factually insufficient. In a
factual sufficiency review, we review all the evidence, but do so in a neutral light and determine
whether the evidence supporting the verdict is so weak or is so outweighed by the great weight and
preponderance of the evidence that the jury's verdict is clearly wrong or manifestly unjust. Roberts
v. State, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); Marshall v. State, 210 S.W.3d 618, 625 (Tex.
Crim. App. 2006); Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); Clewis v.
State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996).

 Andrews denied having possession of the crack pipe containing the cocaine or to the
knowledge or awareness that contraband was in the car. According to Andrews, he would not have
allowed anyone to smoke marihuana in his car. Andrews testified that he had "always owned up to
what [he'd] done" and that he believed the cocaine found in the car belonged to Jones, one of the
other occupants. According to Andrews, Jones remained in the vehicle for "quite some time" after
Andrews had exited the car pursuant to Officer Clark's instruction to do so. Although Andrews
admitted to his addiction to cocaine, he denied having used cocaine on the night he was arrested. 

 The great weight and preponderance of the evidence does not establish that the jury's verdict
is clearly wrong or manifestly unjust. Reconciliation of conflicts in the evidence is within the
exclusive province of the jury as the sole judge of witness credibility. Clewis, 922 S.W.2d at 
132 n.10. The jury was not required to believe Andrews's version of events and the evidence is not
so weak that the jury's verdict is clearly wrong. The fact that the State did not present evidence of
every conceivable link which the courts have recognized as being pertinent or affirmative ties does
not lead us to conclude that the evidence is factually insufficient. "Although an appellate court
reviewing factual sufficiency has the ability to second-guess the jury to a limited degree, the review
should still be deferential, with a high level of skepticism about the jury's verdict required before a
reversal can occur." Roberts, 220 S.W.3d at 524. We are unable to reach the high level of
skepticism required to reverse the jury's verdict. Andrews's second point of error is overruled.

Ineffective Assistance of Counsel

 In his final point of error, Andrews contends that he received ineffective assistance of
counsel. To succeed on appeal in raising a claim that one's trial counsel provided ineffective
assistance, an appellant must demonstrate by a preponderance of the evidence (1) that counsel's
representation fell below an objective standard of reasonableness and (2) that this deficient
performance prejudiced the appellant's defense. Strickland v. Washington, 466 U.S. 668, 687 (1984);
Andrews v. State, 159 S.W.3d 98, 100-01 (Tex. Crim. App. 2005); Bone v. State, 77 S.W.3d 828,
833 (Tex. Crim. App. 2002). 

 Under Strickland, the appellant "must prove that counsel's representation so undermined the
proper functioning of the adversarial process that the trial cannot be relied on as having produced
a just result." Strickland, 466 U.S. at 686; Mosley v. State, 141 S.W.3d 816, 826 (Tex.
App.--Texarkana 2004, pet. ref'd). The appellant must meet his burden as to both prongs of the
Strickland test; should the proof fail as to either, then we must overrule the claim of ineffective
assistance. Mosley, 141 S.W.3d at 825-26. For example, under Strickland's first prong, if we can
envision a legitimate trial strategy to explain counsel's alleged ineffectiveness, then we are precluded
from sustaining the appellant's claim of reversible error. See Goodspeed v. State, 187 S.W.3d 390,
392-93 (Tex. Crim. App. 2005).

 We begin our analysis of an ineffective assistance claim with the presumption that counsel
performed competently at trial. Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). We
also presume that counsel's decisions were reasonably professional and were motivated by sound trial
strategy. Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). In the absence of direct
evidence of counsel's reasons for the challenged conduct, an appellate court will assume a strategic
motivation if any can be imagined. Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). 
We will not conclude that the challenged conduct constitutes deficient performance unless the
conduct was so outrageous that no competent attorney would have engaged in it. Id.; see Thompson,
9 S.W.3d at 814. 

 Andrews argues that he received ineffective assistance of counsel because his trial counsel
failed to object to inadmissible impeachment evidence. Specifically, Andrews claims that some of
the convictions elicited by the State were too remote in time to be admissible as impeachment
evidence and that the State solicited details concerning prior convictions (such as the sentences
which were assessed and the underlying facts) which were inadmissible. 

 On direct examination, Andrews preemptively admitted to numerous prior convictions in an
attempt to minimize any damage. (8) As mentioned previously, Andrews admitted to at least four
convictions for possession of less than one gram of a controlled substance since 1997. On cross-examination, Andrews admitted to having been arrested for possession of crack cocaine in his car
and at his house on "many" occasions. In addition, Andrews admitted on cross-examination to
having been convicted of delivery of a controlled substance in 2003. The State also questioned
Andrews concerning a 1976 conviction for the burglary of a habitation (for which he received an
eleven-year sentence) as well as a conviction for possession of a controlled substance in 1996. 

 When a defendant voluntarily testifies before a jury, he is subject to the same rules governing
cross-examination as any other witness. See Bryan v. State, 837 S.W.2d 637, 643 (Tex. Crim. App.
1992). However, Rule 608(b) of the Texas Rules of Evidence provides that specific instances of a
witness's conduct may not be the subject of inquiry on cross-examination of the witness for the
purpose of supporting or attacking the witness's credibility except for impeachment of the witness
regarding a conviction of a crime as provided in Rule 609. See Tex. R. Evid. 608, 609. Under Rule
609(b), impeachment of this nature has its limits; a prior conviction is presumed to be too remote
after ten years from the date of conviction or the release of the witness from custody (whichever is
the later date). Tex. R. Evid. 609(b); Jackson v. State, 50 S.W.3d 579, 591 (Tex. App.--Fort Worth
2001, pet. ref'd). Nevertheless, even convictions which are presumed to be remote may be admitted
should the court determine that, "in the interests of justice" and under "specific facts and
circumstances," the probative value of the conviction substantially outweighs its prejudicial effect. (9) 
Tex. R. Evid. 609(b). Whether to admit remote convictions lies within the trial court's discretion
and depends on the facts and circumstances of each case. Jackson, 50 S.W.3d at 591. Trial counsel
may have reasonably concluded that an objection based on remoteness would be overruled, believing
it possible that the probative value under these circumstances substantially outweighed the
prejudicial effect, rendering such an objection futile.

 Even making the assumption (which we do not) that the specific details concerning
Andrews's prior convictions were subject to valid objections had they been interposed, counsel may
have decided not to object to this evidence for reasons of trial strategy. When, as in this case, trial
counsel's reasons for the challenged conduct do not appear in the record, we will assume a strategic
motivation if any can be imagined. Garcia, 57 S.W.3d at 440. The strategy of trial counsel may
have been to convince the jury his client was being open and forthright, not attempting to conceal
any evidence from the jury. It is common lore, and trial counsel may have believed, that a jury
prefers to hear the full story and that a jury often may resent what it perceives as efforts to restrict
the evidence it hears. Based on this strategy, trial counsel may have decided to withhold objections
so as to prevent the jury from developing an impression that counsel was being overly litigious and
objecting at every possible opportunity in an effort to stonewall evidence. Ineffective assistance of
counsel claims cannot be "built on retrospective speculation." Bone, 77 S.W.3d at 835. 

 Further, ineffective assistance of counsel claims must be evaluated based on the totality of
the circumstances. Strickland, 466 U.S. at 693. "Isolated failures to object to certain procedural
mistakes or improper evidence or argument do not constitute ineffective assistance of counsel." 
Wenzy v. State, 855 S.W.2d 52, 53 (Tex. App.--Houston [14th Dist.] 1993, pet. ref'd). Andrews was
not entitled to errorless counsel. See Ex parte Welborn, 785 S.W.2d 391, 393 (Tex. Crim. App.
1990). Andrews has failed to show, under the totality of the circumstances, that his trial counsel's
performance was so outrageous that no competent attorney would have engaged in it. Trial counsel's
performance was not shown to be deficient.

 Finally, Andrews failed to meet the second prong of Strickland. Other than claiming that the
harm is "obvious and clearly contributed to the conviction," Andrews fails to make any effort to
prove "reasonable probability" that the result of the trial would have been different if counsel had
taken the steps which Andrews now says he should have taken. Even had Andrews shown the
performance of trial counsel was deficient, Andrews has failed to show a "reasonable probability"
that, absent trial counsel's alleged errors, the end result of the trial would have been different. "It is
critical that an appellant demonstrate the record shows both the alleged deficiency(ies) and the
alleged prejudice." Bessey v. State, 199 S.W.3d 546, 555 (Tex. App.--Texarkana 2006, pet.
granted). We overrule Andrews's third point of error.

 We affirm the judgment.



 Bailey C. Moseley

 Justice


Date Submitted: August 28, 2007

Date Decided: September 5, 2007


Do Not Publish

1. Officer Clark testified the occupants of the blue Mercury and the occupants of the black
Toyota were inconsistent concerning whether they knew each other. The record suggests, but is
unclear, that there may have been a fourth occupant of the blue Mercury.
2. Karen Shumate, a chemist with the Texas Department of Public Safety, identified the pills,
based on their markings, as Oxybutynin chloride, a bladder control medication; Methocarbamol, a
muscle relaxant; Felodipine, a blood pressure medication; Zocor, a cholesterol medication,
Omeprazole, a stomach medication; a children's aspirin; and two unmarked pills, which were not
identified due to a lack of markings. Shumate testified the pills were most likely all prescription
drugs that are not illegal to possess with a prescription and are unlikely to be abused. Andrews
testified he had a prescription for all of the medications in the pill bottle. Andrews, a Vietnam
veteran, testified he was injured during the war and the injury has gotten progressively worse. On
his last medical visit before the trial, the doctors informed Andrews he had less than a year to live. 
Andrews testified that he had seventeen prescription drugs which he had to take every day and that
he would carry them around in a single pill bottle for convenience. 
3. The Texas Court of Criminal Appeals has indicated a preference for the term "links,"
reasoning that the modifier "affirmative" adds too much confusion within the context of a factual
sufficiency review. Evans v. State, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006).
4. The parties have not directed us to where in the record the ownership of the blue Mercury
is established. However, a rational juror could infer from the evidence that Andrews owned the car
in question. Andrews consistently refers to the car as "my car" and, when asked if he still owned the
vehicle, Andrews testified he had "sold it recently" because he is no longer able to drive due to his
medical conditions.
5. Andrews later clarified this testimony and explained he believed one could quit using crack
cocaine but would, nevertheless, always remain an addict.
6. The events in question occurred on or about November 26, 2004, and the trial in this case
occurred on February 21, 2007.
7. Although not clear from the record, Andrews suggested on redirect testimony that the ticket
he was "paying out" may not have been for the drug paraphernalia charge, but due to a "mix up or
oversight" or because the ticket had "been there for quite some time."
8. We note, when a defendant takes the stand and gratuitously testifies concerning certain
evidence, he opens the door to the prosecutor's use of such evidence. See Gaffney v. State, 940
S.W.2d 682, 687 (Tex. App.--Texarkana 1996, pet. ref'd) (op. on reh'g). The State does not argue
that Andrews opened the door.
9. Prior to the adoption of the Texas Rules of Evidence, it was commonly held that a
defendant's more recent convictions can revive an otherwise presumptively remote conviction. We
note that both the Fort Worth and Houston's First District Courts of Appeals have held that this
tacking doctrine exception has survived the adoption of the new Texas Rules of Evidence. See
Jackson, 50 S.W.3d at 591-92; Hernandez v. State, 976 S.W.2d 753, 755 (Tex. App.--Houston [1st
Dist.]), pet. ref'd, 980 S.W.2d 652 (Tex. Crim. App. 1998) (Womack, J., concurring on refusal to
grant State's petition for review). But see Hankins v. State, 180 S.W.3d 177, 180 (Tex.
App.--Austin 2005, pet. ref'd) (refusing to apply the "tacking doctrine"). Under the exception,
"[e]vidence of the lack of reformation through subsequent felony and certain misdemeanor
convictions may then cause the prior conviction to fall outside the general rule and not be subject
to the objection of remoteness." Jackson, 50 S.W.3d at 591. It is not necessary for us to decide in
this case whether the above exception survived the adoption of the Texas Rules of Evidence.